UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

AMERICAN TOWER CORPORATION,
                Plaintiff,

v.

J.L.B. CONSTRUCTION, INC., 21ST
CAPITAL CORPORATION, PRIME
COMMUNICATIONS, LLC, AMF
ELECTRICAL CONTRACTORS, INC.,
HEINZ CORPORATION, DANIEL
WENESS CONSTRUCTION,
WESTERN STATES TOWER, LLC,
WEST CENTRAL CONSULTING
SERVICES, INC., STEWART
ELECTRIC, INC., GLOBAL TOWER
SERVICE, ADVANCED LIGHTNING
TECHNOLOGY, INC. and GULF
COAST STEEPLEJACK,
                Defendants.

04-12317WGY

Nov. 1, 2004

Motion allowed, preliminary injunction in force until Nov. 16, 2004 at 5:00 p.m.

William G. Young
Chief Judge

**PLAINTIFF'S EMERGENCY MOTION TO ALLOW FUNDS TO BE DEPOSITED
IN THE REGISTRY OF THE COURT AND FOR PRELIMINARY INJUNCTION**

    NOW COMES the Plaintiff, American Tower Corporation ("American Tower"), and pursuant to 28 U.S.C. §1335 and 28 U.S.C. §2361 hereby moves, on an emergency basis, for the entry of an order that: i) allows American Tower to deposit the funds at issue in the Complaint for Interpleader, filed contemporaneously herewith, in the registry of the Court; and (ii) enjoins J.L.B. Construction, Inc., 21st Capital Corporation, Prime Communications, LLC, AMF Electrical Contractors, Inc., Heinz Corporation, Daniel Weness Construction, Western States Tower, LLC, West Central Consulting Services, Inc. ("WCCS"),

Stewart Electric, Inc., Global Tower Service, Inc., Advanced Lightning Technology, Inc. and Gulf Coast Steeplejack (collectively, the "Defendants"), and all persons acting in concert with them from, among other things, from instituting or prosecuting any actions against the Plaintiff which relate to the funds at issue in this interpleader action or which relate to alleged non-payment for work performed at the Sites in accordance with the Master Contractor Agreement, dated January 1, 2003, until an evidentiary hearing on the merits is scheduled and held by this Court.

## PROCEDURAL HISTORY

The Plaintiff has filed a Complaint contemporaneously herewith in the United States District Court of Massachusetts for Breach of Contract, Fraud, Indemnification, Contribution, Declaratory Relief, and Interpleader.

## FACTUAL BACKGROUND

On or about January 1, 2003, the Plaintiff American Tower ("American Tower"), on behalf of ATC Tower Services, Inc. ("ACS"), and the Defendant JLB entered into a Master Contractor Agreement (the "Agreement") whereby J.L.B. Construction, Inc. ("J.L.B.") agreed to provide general contracting services to ACS and American Tower at twenty-two (22) tower sites (the "Sites") located in a number of states across the United States. See Affidavit of Paul J. Bergendahl, II ("Bergendahl Affidavit") ¶3, and Agreement attached thereto as *Exhibit A*. Under the Agreement, a Schedule and Purchase Order was produced for each site designating the site, the work to be completed and the contract price. See Bergendahl Affidavit, ¶4.

Under Article 7 of the Agreement, the Defendant JLB agreed to participate in and oversee the performance and completion of work at each of the Sites, and under Article 9.1 of the Agreement, ACS agreed to pay JLB for the completion of the work at each of the Sites. See Bergendahl Affidavit, ¶5. Pursuant to Article 4.7.1 of the Agreement, JLB was given the authority to hire subcontractors in order to complete the work at each of the Sites in exchange for payment by ACS to JLB and by JLB to the subcontractors for all work completed, so long as permission of the Plaintiff was granted in writing with regard to the hiring of the subcontractor pursuant to Article 6.3 of the Agreement. See Bergendahl Affidavit, ¶6.

The Defendant JLB is responsible for all payments to the subcontractors for work performed at the sites, however, American Tower and ACS reserved the right, under Articles 4.7.2 and 4.7.3 of the Agreement, to make payments to a subcontractor directly in the event that JLB failed to pay any subcontractor as promised. See Bergendahl Affidavit, ¶7. Under the Agreement, "if [American Tower] has reason to believe that [JLB] is not timely paying its subcontractors, Contractor agrees that [American Tower] shall have the right to make any payment due hereunder to Contractor jointly to Contractor and to any person, subcontractor, supplier or other entity to whom Contractor is indebted for labor performed or materials furnished in the performance of the Work." See Bergendahl Affidavit, *Exhibit A*.

On information and belief, on or about December 12, 2003, Jason L. Bentley, on behalf of JLB, entered into an on-line factoring agreement with

3

Capital Factors, Inc. ("CFI"), a lending corporation which later became a part of Capital, assigning a certain unascertained portion of JLB's accounts receivable due under the Agreement with ATC to Capital. See Bergendahl Affidavit, ¶9. On or about July 13, 2004, Capital began to demand payment from American Tower for work performed under the Agreement, and instructed American Tower not to forward any further payment to JLB. See Bergendahl Affidavit, ¶10. The Defendant J.L.B. denies that it entered into any such factoring agreement. See Bergendahl Affidavit, ¶11.

Thereafter, ACS was forced to use its own employees and to hire additional subcontractors to complete certain projects at some of the Sites. See Bergendahl Affidavit, ¶12. The additional monies paid to subcontractors for the completion of the work (the "set-off amount") was above and beyond the contract price determined and agreed upon by ACS and JLB. See Bergendahl Affidavit, ¶16. Additionally, on or about August 16, 2004, WCCS filed a notice of intent to lien and a notice of labor and materialman's lien for the Cleveland site and the same documents for the Sunflower site, despite the fact that JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement. See Bergendahl Affidavit, ¶13. WCCS has also threatened to file suit against the Plaintiff in order to collect the alleged outstanding moneys owed under the Agreement. See Bergendahl Affidavit, ¶14.

ACS has paid Forty-Six Thousand One Hundred Dollars ($46,100.00) to JLB in accordance with the Agreement and ACS has also paid certain

4

subcontractors One Hundred Sixteen Thousand Seven Hundred Sixty-Five Dollars and 96/100 ($116,765.96) for work performed on those Sites. See Bergendahl Affidavit, ¶15. Further, to date, ACS has paid a set-off amount of Twenty-Two Thousand Seven Hundred Fifty Dollars ($22,750.00) beyond the contract price in order to complete the projects at certain sites. See Bergendahl Affidavit, ¶16.

Under the Agreement, ACS maintains that it now owes JLB a total of One Hundred Twenty-Nine Thousand Nine Hundred Thirty-Nine Dollars and 04/100 ($129,939.04) in full satisfaction of the Agreement. See Bergendahl Affidavit, ¶17. This was calculated by the following analysis: Original Contract Price, minus payments to Subcontractors paid directly by ACS, minus payments made to JLB by ACS, minus additional monies paid by or costs incurred by ACS for completion of the various Site projects. See Bergendahl Affidavit, ¶18. Based on the foregoing, it appears that JLB owes the remaining subcontractors a total of One Hundred Eighty-Seven Thousand Seven Hundred Twenty-Two Dollars and 51/100 ($187,722.51). See Bergendahl Affidavit, ¶19. On information and belief, no payments have been made to the subcontractors by JLB or Capital. See Bergendahl Affidavit, ¶20.

Capital is demanding payment on the accounts receivable from American Tower under the Agreement in the amount of One Hundred Sixty-Six Thousand Two Hundred Eighty-Three Dollars ($166,283.00). See Bergendahl Affidavit, ¶21. As a result of the conflicting claims and demands for payment, the plaintiff is exposed to multiple liability.

## LEGAL ANALYSIS

### A. MOTION FOR DEPOSIT IN THE REGISTRY OF THE COURT

Pursuant to 28 U.S.C. §1335, the funds at issue in an interpleader action may be deposited in the registry of the court. Accordingly, the Plaintiff now moves for an order to deposit the funds at issue in the registry of the Court, until further order of the Court.

### B. MOTION FOR PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. §2361, the Court may enter orders restraining the defendants from "instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." In order for the preliminary injunction to issue, the Plaintiff must satisfy the following four criteria; (1) demonstrate a reasonable likelihood of success on the merits of the claim; (2) show that [the plaintiff] will suffer irreparable injury if the injunction is not granted. (3) show that such injury outweighs any harm which granting injunctive relief would cause the defendant(s); and (4) that the public interest will not be adversely affected by the granting of the injunction. *Town of Westwood v. Adams Russell Company, Inc.*, 24 Mass. App. Ct. 914, 916, 507 N.E.2d 763 (1987); *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 405 N.E.2d 106 (1980); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *See also, Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987).

When asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617, 405 N.E.2d 106, 112 (1980).

Although the decision to issue a preliminary injunction pursuant to 28 U.S.C. §2361 is within the sound discretion of the court, courts have not hesitated to issue such injunctions. *Shell Pipe Line Corp. v. West Texas Marketing Corp.*, 540 F. Supp. 1155 (S.D. Tx. 1982) (court has discretion to issue temporary injunctions); *Commerce and Industry Insurance Co.. v. Cableware, Ltd.*, F. Supp. 204 (S.D.N.Y. 1976) (power to issue temporary injunctions is within broad discretion of the court); *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977) (restraining all parties from bringing any action relating to proceeds at issue in the interpleader).

Consistent with the purpose underlying the federal rules and statutes authorizing the interpleader actions, courts have recognized that injunctions are often essential to protect stakeholders from the burden of defending multiple

actions. *O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (injunction was necessary to protect stakeholder from competing claims and threats of foreclosure and garnishment); *Commercial Union Insurance Co. of New York v. Adams*, 231 F. Supp. 860 (S.D. Ind. 1964) (ordering injunction to protect party from burden of defending multiple actions).

In the instant matter, an injunction, on an emergency basis, is necessary to protect the Plaintiff from having to defend any other actions at the same time it is litigating the Interpleader action in Massachusetts and to prevent the parties from instituting any further legal proceedings relating to the funds at issue or the moneys allegedly owed to various subcontractors under the Agreement. In fact, WCCS has already threatened to file suit against the Plaintiff in order to collect the alleged outstanding moneys owed under the Agreement. See Bergendahl Affidavit, ¶14. Further, the Plaintiff is at risk of immediate and irreparable harm if the Preliminary Injunction is not issued. Two subcontractors have already filed liens on the particular sites, and there is a possibility of impending lawsuits related to this subject matter.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter an order that:

A.  Allows the Plaintiff to deposit the funds that are the subject of the interpleader action with the registry of the Court;

B.  Restrains any of the parties of this action from instituting or prosecuting any actions against the Plaintiff which relate to the funds at issue in

8

this interpleader action or which relate to alleged non-payment for work performed at the Sites in accordance with the Agreement; and

    C.    Grants such other and further relief as the Court deems necessary and proper.

        Respectfully submitted,
AMERICAN TOWER CORPORATION,
By its attorneys,

_____
Gregory J. Aceto, Esq.
(BBO No. 558556)
JOHNSON & ACETO, P.C.
67 Batterymarch Street
Boston, MA  02110
(617) 728-0888

Dated:  November 1, 2004

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

AMERICAN TOWER CORPORATION,
                    Plaintiff,

v.

J.L.B. CONSTRUCTION, INC., 21ST CAPITAL CORPORATION, PRIME COMMUNICATIONS, LLC, AMF ELECTRICAL CONTRACTORS, INC., HEINZ CORPORATION, DANIEL WENESS CONSTRUCTION, WESTERN STATES TOWER, LLC, WEST CENTRAL CONSULTING SERVICES, INC., STEWART ELECTRIC, INC., GLOBAL TOWER SERVICE, ADVANCED LIGHTNING TECHNOLOGY, INC. and GULF COAST STEEPLEJACK,
                    Defendants.

## PROPOSED ORDER

The matter having come before the Court on Plaintiff's Motion to allow funds to be deposited in the registry of the Court and for Preliminary Injunction, and after review of the Motion and the evidence submitted at the hearing, the Court hereby finds that the Plaintiff will suffer immediate and irreparable harm if the Preliminary Injunction is not issued. **It is therefore adjudged and ORDERED:**

(1)   That the Defendants listed above and all persons acting in concert with them are enjoined and restrained from, among other things, taking any

action in furtherance of their claims or instituting or prosecuting any actions against the Plaintiff which relate to the funds at issue in this interpleader action or which relate to alleged non-payment for work performed at the Sites in accordance with the Agreement until an evidentiary hearing on the merits is scheduled and held by this Court; and

  (2) That Plaintiff deposit the funds at issue in the related Interpleader action with the registry of the Court.

               _____
               J., United States District Court

Dated: November _____, 2004

2