**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
CLERK'S OFFICE

20 NOV -1  P 3: 21

CIVIL ACTION NO.:

DISTRICT OF MASS.

| |
|---|
| AMERICAN TOWER CORPORATION,<br>Plaintiff,<br><br>v.<br><br>J.L.B. CONSTRUCTION, INC., 21ST<br>CAPITAL CORPORATION, PRIME<br>COMMUNICATIONS, LLC, AMF<br>ELECTRICAL CONTRACTORS, INC.,<br>HEINZ CORPORATION, DANIEL<br>WENESS CONSTRUCTION,<br>WESTERN STATES TOWER, LLC,<br>WEST CENTRAL CONSULTING<br>SERVICES, INC., STEWART<br>ELECTRIC, INC., GLOBAL TOWER<br>SERVICE, ADVANCED LIGHTNING<br>TECHNOLOGY, INC. and GULF<br>COAST STEEPLEJACK,<br>Defendants. |

# 04 - 12317 WGY

**AFFIDAVIT OF PAUL J. BERGENDAHL, II IN SUPPORT OF MOTION
TO ALLOW FUNDS TO BE DEPOSITED IN THE REGISTRY OF THE COURT
AND FOR PRELIMINARY INJUNCTION**

I, Paul J. Bergendahl, II, under oath, hereby depose and state as follows:

1.    I make this affidavit based upon my own personal knowledge and belief

and offer it in support of a motion to allow funds to be deposited in the

registry of the Court and for preliminary injunction.

2.    I am the senior paralegal in the Legal Department of American Tower

Corporation, located at 116 Huntington Avenue, Boston, MA 02116.

3.      On or about January 1, 2003, the Plaintiff American Tower Corporation

("American Tower"), on behalf of ATC Tower Services, Inc. ("ACS"), and the

Defendant JLB entered into a Master Contractor Agreement (the "Agreement")

whereby J.L.B. Construction, Inc. ("J.L.B.") agreed to provide general contracting

services to ACS and American Tower at twenty-two (22) tower sites (the "Sites")

located in a number of states across the United States.  A true and correct copy

of the Agreement is attached hereto as *Exhibit A*.

4.      Under the Agreement, a Schedule and Purchase Order was produced for

each site designating the site, the work to be completed and the contract price.

5.      Under Article 7 of the Agreement, the Defendant JLB agreed to participate

in and oversee the performance and completion of work at each of the Sites, and

under Article 9.1 of the Agreement, ACS agreed to pay JLB for the completion of

the work at each of the Sites.

6.      Pursuant to Article 4.7.1 of the Agreement, JLB was given the authority to

hire subcontractors in order to complete the work at each of the Sites in

exchange for payment by ACS to JLB and by JLB to the subcontractors for all

work completed, so long as permission of the Plaintiff was granted in writing with

regard to the hiring of the subcontractor pursuant to Article 6.3 of the Agreement.

Without the express consent of ACS, JLB hired numerous subcontractors,

including but not limited to Prime Communications, LLC; AMF Electrical

Contractors, Inc.; Heinz Corporation; Daniel Weness Construction; Western

States Tower, LLC; West Central Consulting Services, Inc. ("WCCS"); Stewart

Electric, Inc.; Global Tower Service, Inc.; Advanced Lightning Technology, Inc. and Gulf Coast Steeplejack (collectively, the "Subcontractor Defendants").

7.    The Defendant JLB is responsible for all payments to the subcontractors for work performed at the sites, however, American Tower and ACS reserved the right, under Articles 4.7.2 and 4.7.3 of the Agreement, to make payments to a subcontractor directly in the event that JLB failed to pay any subcontractor as promised.

8.    Under the Agreement, "if [American Tower] has reason to believe that [JLB] is not timely paying its subcontractors, Contractor agrees that [American Tower] shall have the right to make any payment due hereunder to Contractor jointly to Contractor and to any person, subcontractor, supplier or other entity to whom Contractor is indebted for labor performed or materials furnished in the performance of the Work." See Agreement, Article 4.7.2.

9.    On information and belief, on or about December 12, 2003, Jason L. Bentley, on behalf of JLB, entered into an on-line factoring agreement with Capital Factors, Inc. ("CFI"), a lending corporation which later became a part of Capital, assigning a certain unascertained portion of JLB's accounts receivable due under the Agreement with ATC to Capital.

10.    On or about July 13, 2004, Capital began to demand payment from American Tower for work performed under the Agreement, and instructed American Tower not to forward any further payment to JLB.

11.    On information and belief, I have been informed that the Defendant JLB denies that it entered into any such factoring agreement.

3

12.    Thereafter, ACS was forced to use its own employees and to hire additional subcontractors to complete certain projects at some of the Sites.

13.    Additionally, on or about August 16, 2004, WCCS filed a notice of intent to lien and a notice of labor and materialman's lien for the Cleveland site and the same documents for the Sunflower site, despite the fact that JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement.

14.    WCCS has threatened to file suit against the Plaintiff in order to collect the alleged outstanding moneys owed under the Agreement.

15.    ACS has paid Forty-Six Thousand One Hundred Dollars ($46,100.00) to JLB in accordance with the Agreement and ACS has also paid certain subcontractors One Hundred Sixteen Thousand Seven Hundred Sixty-Five Dollars and 96/100 ($116,765.96) for work performed on those Sites.

16.    Further, to date, ACS has paid a set-off amount (the "Set-Off Amount") of Twenty-Two Thousand Seven Hundred Fifty Dollars ($22,750.00) beyond the contract price in order to complete the projects at certain sites.   The Set-Off Amount was above and beyond the contract price determined and agreed upon by ACS and JLB.

17.    Under the Agreement, ACS maintains that it now owes JLB a total of One Hundred Twenty-Nine Thousand Nine Hundred Thirty-Nine Dollars and 04/100 ($129,939.04) in full satisfaction of the Agreement.

4

18.    This was calculated by the following analysis: Original Contract Price, minus payments to Subcontractors paid directly by ACS, minus payments made to JLB by ACS, minus additional monies paid by or costs incurred by ACS for completion of the various Site projects.

19.    Based on the foregoing, it appears that JLB owes the remaining subcontractors a total of One Hundred Eighty-Seven Thousand Seven Hundred Twenty-Two Dollars and 51/100 ($187,722.51).

20.    On information and belief, no additional payments have been made to the subcontractors by JLB or Capital.

21.    Capital is demanding payment on the accounts receivable from American Tower under the Agreement in the amount of One Hundred Sixty-Six Thousand Two Hundred Eighty-Three Dollars ($166,283.00).

Signed under the pains and penalties of perjury this First day of November, 2004.

Paul J. Bergendahl, II

### AMERICAN TOWER CORPORATION

### MASTER CONTRACTOR AGREEMENT

This Master Contractor Agreement ("Agreement") made as of this __1__ day of __Jan.__, 20_03_, between American Tower Corporation and its subsidiary and affiliated companies (collectively "ATC"), a Delaware corporation with offices at 116 Huntington Avenue, Boston, MA 02116 and **J.L.B. Construction Inc** _____ and its subsidiary and affiliated companies, a/an **Iowa** corporation, with offices at **241 West Franklin Street , Denver, Iowa 50622** ("Contractor") (ATC and Contractor may herein be referred to as "Party[ies]").

### RECITALS

WHEREAS, Contractor provides construction and equipment installation or other tower site services; and

WHEREAS, ATC may, either for itself or pursuant to a contract signed with an ATC Customer ("Prime Contract"), request that Contractor construct all
other tower site services.

NOW THEREFORE, in consideration of the mutual covenants benefiting the Parties hereto, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereto agree as follows:

### ARTICLE 1: THE CONTRACT DOCUMENTS

1.1 The agreement between the Parties shall be evidenced by the completion and execution by both Parties of a schedule in the form of Schedule 1 attached hereto ("Schedule") or a Purchase Order ("PO") issued by ATC and accepted by Contractor. Such Schedule or PO shall describe the Work to be completed by Contractor at the project site or sites ("Project") and include the architectural and engineering drawings, scope of work and other specifications attached thereto (together with its relevant Schedule or PO, the "Work"). The terms and conditions of this Agreement shall apply to all Work pursuant to any such Schedule or PO. Any Project specific terms, including without limitation contract price ("Contract Price"), shall be set forth on the relevant Schedule or PO for such Project. Notwithstanding anything to the contrary herein, no Project or Work shall be authorized by ATC unless both ATC and Contractor have executed a completed Schedule or a PO has been issued and accepted with respect to such Project or Work. A Schedule or PO becomes binding subject to the terms set forth herein when accepted or acknowledged in writing by Contractor or upon commencement of performance by Contractor. No change in the Schedule or PO shall be valid unless such change is in writing and signed by an authorized representative of ATC.

1.2 ATC reserves the right to revise the form of the PO or Schedule.

1.3 The Contract Documents consist of (a) this Agreement, (b) the Schedule or PO, (c) all documents listed in a Schedule or PO, and (d) modifications to each Schedule or PO ("Modifications"). These Contract Documents are incorporated herein by reference in their entirety and are as fully a part of this Agreement as if attached to this Agreement or repeated herein. This Agreement represents the entire and integrated agreement between the Parties hereto and supercedes prior communications and agreements, whether written or oral, concerning the subject matter of the Contract Documents. Any different, conflicting or additional terms contained in Contractor's acceptance or acknowledgement are hereby expressly rejected by ATC and shall have no effect. The Contract Documents specific to each Project, other than Modifications to each respective Schedule or PO issued subsequent to the execution of such Schedule or PO, are listed in the Schedule or PO. No change or Modification shall be valid unless agreed to in writing and signed by an authorized representative of ATC.

1.4 The specifications and drawings provided to Contractor by ATC may not be complete in every detail. Contractor shall comply with the manifest intent and general purpose, taken as a whole. If Contractor identifies

or becomes aware of any conflict, error or omission in the drawings, specifications, instructions or in work done by others, Contractor shall notify ATC at once and ATC will issue written instructions to Contractor. If Contractor proceeds with any Work prior to receiving such instructions, all corrections or re-work shall be performed at Contractor's expense.

## ARTICLE 2: TERM

2.1 The term of this Agreement ("Term") shall commence on the date first written above (the "Effective Date") and, unless terminated in accordance with Article 7, shall continue for a two-year period following the Effective Date and shall remain in effect, with respect to each Schedule or PO, for so long thereafter as any Work described in such Schedule or PO remains uncompleted. Notwithstanding the foregoing, the Term of this Agreement shall automatically renew in accordance with the terms and conditions herein for successive periods of two (2) years each at the end of each then-current Term unless either party shall have given the other no less than ninety (90) days prior written notice of its intention to terminate this Agreement effective as of the end of the then-current Term.

## ARTICLE 3: ATC'S RIGHTS AND RESPONSIBILITIES

3.1 ATC shall promptly notify Contractor of any circumstances known to the ATC Project Manager that materially affect the Work.

3.2 Liquidated damages for delay, as provided for in the relevant Schedule or PO, shall be assessed against Contractor to the extent that such damages or delays are caused by Contractor, Contractor's employees and agents, subcontractors, suppliers or any person or entity for whose acts or omissions Contractor may be liable.

## ARTICLE 4: CONTRACTOR'S RIGHTS AND RESPONSIBILITIES

### 4.1 Execution and Progress of the Work

4.1.1 All Work shall be performed ir
care exercised by reputable co:
the Project and using the Contr
for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under this Agreement. The Contractor shall be responsible to ATC for the acts and omissions of the Contractor's employees, its subcontractors and their agents and employees, and other persons performing the Work on behalf of Contractor; Contractor shall use methods, equipment and documentation practices which conform with prevailing standards of accuracy, competence and completeness for the Work required and in accordance with all applicable regulations and agency requirements of the state in which the Work is performed, or as otherwise specified by ATC.

4.1.2 Unless otherwise specified in a Schedule or a PO, Contractor shall, at its own expense, furnish all labor, materials, tools, machinery, vehicles, transportation, subcontracted items, supplies, equipment, personnel and facilities necessary to complete the Work. All of the Work shall be performed in accordance with the Contract Documents.

4.1.3 Contractor shall supply ATC with its schedule and shall cooperate with ATC in scheduling and performing Contractor's Work to avoid conflict, delay or interference with the work of other contractors.

4.1.4 Contractor shall promptly submit shop drawings, product data, samples and similar submittals required by the relevant Contract Documents, and in such sequence as to avoid causing a delay in the Work or in the activities of other contractors.

4.1.5 Contractor shall furnish to ATC periodic progress reports on the Work on each respective Schedule or PO as mutually agreed upon or upon ATC's reasonable request. The periodic progress reports shall include information on the status of materials and equipment that may be in the course of preparation or manufacture.

4.1.6   Contractor agrees that ATC shall have the authority, in its sole discretion, to reject Work that does not conform to the Contract Documents.

4.1.7   Contractor shall take necessary precautions to protect the work of other contractors.

4.1.8   Contractor shall cooperate with other contractors and with ATC during performance of the Work.

4.1.9   Contractor shall promptly provide information to ATC that may affect the Contract Documents, each respective Schedule or PO, or the Work and that becomes available to Contractor subsequent to execution of this Agreement.

**4.2 Laws, Permits, Fees and Notices**

4.2.1   Contractor shall give all notices and comply with all laws, ordinances, rules, regulations and orders of public authorities applicable to the performance of the Work, including without limitation, all federal, state and local safety regulations and Occupational Safety and Health Act ("OSHA") requirements. Where any rules, regulations and practices are in conflict, Contractor shall comply with the provision that is the most stringent.

4.2.2   Contractor shall secure and pay for all permits and governmental fees, licenses and inspections necessary for proper execution and completion of Contractor's Work, provided that upon in ATC's sole discretion, ATC may issue checks payable directly to the appropriate governmental entity for the cost of any such permit, license or fee.

4.2.3   Contractor warrants that it, and that any subcontractor that Contractor may hire, has all current and valid licenses required by state and local laws for contractors doing the type of Work covered by the relevant Contract Documents and agrees to supply copies of those licenses to ATC upon request.

4.2.4   Contractor shall pay all federal, state and local taxes related to the Work and shall comply with social security acts, unemployment compensation acts, and workers compensation acts applicable to the Work. Prior to the commencement of any Work to be performed in the state of North Carolina, Contractor must, and Contractor must cause every subcontractor retained by Contractor to, deliver to ATC a certificate from the North Carolina Industrial Commission stating that Contractor and its subcontractors have each complied with G.S. 97-93 of the North Carolina General Statutes.

**4.3     Safety Precautions and Procedures**

4.3.1   Contractor shall take all necessary or required safety precautions with respect to the performance of the Work and shall comply with all applicable laws, ordinances, rules, regulations and orders of public authorities for the safety of persons or property, including without limitation the requirements of OSHA and other governmental authorities and agencies. Contractor shall provide all necessary or required protection, including without limitation the provision of employee training and appropriate fall protection equipment, to prevent damage, injury or loss to: (a) all persons performing the Work and all other persons who may be affected thereby; (b) the Work, and all materials and equipment to be incorporated therein, whether in storage on or off the Work Site, under the care, custody or control of Contractor or any of its subcontractors, and (c) all other property at the Work Site or adjacent thereto, including substructures. Contractor shall report any injury or death immediately to ATC. Contractor shall also immediately notify its insurance carrier of any such injury or death and shall provide a copy of any investigation, report or notification to ATC.

4.3.2   Contractor shall conduct a safety meeting each day prior to the commencement of Work. Such safety meeting shall address, at a minimum, the Work planned for the day, safety equipment and procedures, and coordination with other contractors. Contractor shall prepare a daily safety meeting agenda sheet that shall be signed by Contractor's employees and maintained in the Contractor Project file.

4.3.3     Contractor shall, prior to using any hazardous substance, give written notice of the chemical composition thereof to its employees and subcontractors and to ATC.

4.3.4     In the event Contractor encounters material on the Site reasonably believed to be a hazardous substance, asbestos or polychlorinated biphenyls ("PCB"), Contractor shall immediately stop Work and report the condition to ATC in writing. The Work in the affected area shall not resume until the condition has abated or has been adequately addressed.

4.3.5     Notwithstanding anything to the contrary herein, in the event that ATC observes any violation by Contractor, or Contractor's subcontractors, of their safe work practices obligations under this Article 4, ATC may order the Work stopped until the violation is corrected and Contractor shall receive no additional compensation and no extension of the completion date for the Work on account of such Work stoppage. If the violation is not corrected within a reasonable period of time after Work is stopped, ATC may, in its sole discretion, declare Contractor to be in default of this Agreement.

4.3.6     Contractor shall provide, and its employees shall use, approved safety and health equipment. Contractor shall work in harmony with other workers at the construction site, and shall be responsible for compliance with all safety rules and regulations under OSHA and other applicable statutes and ordinances related to the Work. Contractor shall indemnify, defend and hold harmless ATC and its subsidiary and affiliated companies and their respective directors, officers, employees, agents and assigns from and against any claims, liability, expenses or obligations of every nature and kind, including fines, penalties, counsel fees, expert and other fees and expenses and costs of litigation, defense settlement or judgments, arising out of or related to Contractor's safety and health practices.

4.3.7     Contractor shall provide all safety and health information reasonably requested by ATC's health and safety staff during the Term of this Agreement.

**4.4     Cleaning up**

Contractor shall keep the Project site and surrounding area free from accumulation of debris, waste materials or rubbish caused by the Work.

**4.5     Warranty**

4.5.1     Contractor warrants to ATC that materials and equipment furnished under the Contract Documents will be of good quality and new unless otherwise required or permitted by the Contract Documents, that the Work will be free from defects, and that the Work will conform, in all respects, with the requirements of the Contract Documents. Contractor hereby further warrants that it will deliver to ATC good and marketable title to the equipment and materials furnished by Contractor hereunder, if any, free and clear of all encumbrances whatsoever, and that Contractor shall assign to ATC all manufacturer's warranties regarding such equipment and materials. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. The decision of ATC, or its authorized representative, shall be final as to the quality of workmanship and materials, and any Work rejected shall be promptly repaired or replaced by Contractor at its sole expense. This warranty shall be in addition to, and not in limitation of, any other warranty or remedy provided by law or by the Contract Documents. For a period of one (1) year after the date on which the Work has been accepted by ATC, or such longer period as may be required by ATC's Specifications, Contractor warrants the Work against defective materials (supplied by Contractor) and faulty workmanship, and warrants the proper operation of the Work under normal conditions. Contractor further warrants that the Work site will be as fully restored, to the extent possible, to its state existing prior to commencement of the Work or the required restoration of the Work site discovered by ATC within the warranty period, and Contractor, at its sole expense, shall promptly repair or restore the same. Final payment or acceptance of the Work by ATC shall not relieve Contractor from any of its warranty obligations.

4.5.2     Contractor warrants that all Work shall be performed by qualified persons or contractors, including, but not limited to, steeplejacks or other tower climbers. In the event that the Work includes the erection of the

tower structure, ATC and Contractor agree that Contractor shall have sole responsibility for the conduct of the activities relating to the erection of the tower structure and that ATC may and shall rely solely upon Contractor's judgment and expertise in conducting appropriate control and safety procedures with respect to such Work.

**4.6  Indemnification**

**4.6.1**  It is agreed that five percent (5%) of the Contract Price (and not in addition to such amount) is allocated to and paid in consideration for Contractor's agreement, to the fullest extent permitted by law, to indemnify, defend and hold harmless the Project Site Owner, ATC's Customer, ATC, its subsidiary and affiliated companies and their respective directors, officers, employees, agents and assigns from and against any and all claims, damages, losses, judgments, liens, demands, liabilities and expenses of every nature and kind, including without limitation, claims for personal injury or death (including injury or death to Contractor's employees), property damage, adverse effects on the environment and reasonable attorneys' fees, expert witness fees and court costs, arising out of, related to or resulting from (a) Contractor's performance of the Work, (b) the acts or omissions of Contractor, Contractor's subcontractors, or anyone directly or indirectly employed by them or any party for whose acts or omissions they may be liable, regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder, (c) the breach of any of the provisions of this Agreement by Contractor, its subcontractors, or anyone directly or indirectly employed by them or anyone for whose acts or omissions Contractor may be liable or (d) any claim of infringement of any patent, trademark or other intellectual property right. Such indemnity obligations shall be in addition to any other rights available to any Party indemnified hereunder, and shall not be limited in any manner by the provisions of applicable worker's compensation statutes.

**4.6.2**  Contractor shall be given notice of the institution of any suit, claim or demand within a reasonable time after an officer of ATC acquires actual knowledge thereof, and shall defend the same with counsel satisfactory to ATC and without cost to ATC (saving that ATC shall pay its own counsel fee if it wishes to have separate representatives in any such suit). ATC will cooperate with Contractor and give reasonable access to information. Contractor shall reimburse ATC for expenses incurred by ATC in giving such information and cooperation. No compromise or settlement of any such suit, claim or demand shall be entered into without the prior written consent of ATC.

**4.7  Subcontractors**

**4.7.1**  Subject to Section 6.3, Contractor may enter into agreements with subcontractors to perform portions of the Work. Contractor shall bind all subcontractors to the terms and conditions of this Agreement and the relevant Contract Documents, and Contractor agrees that Contractor is as fully responsible to ATC for the acts or omissions of its subcontractors and of persons directly or indirectly employed by them as it is for its own acts and omissions. Notwithstanding anything to the contrary in this Agreement or any of the Contract Documents, ATC reserves the right, in its sole discretion, to refuse to permit any company, person or other entity to perform the Work.

**4.7.2**  If ATC has reason to believe that Contractor is not timely paying its subcontractors, Contractor agrees that ATC shall have the right to make any payment due Contractor hereunder jointly to Contractor and to any person, subcontractor, supplier or other entity to whom Contractor is indebted for labor performed or materials furnished in the performance of the Work. Contractor agrees to pay ATC all costs of collection, including but not limited to, reasonable attorneys' fees, collection fees and court costs incurred by ATC to collect properly due payments, or payments due and owing to subcontractors, excluding costs associated with invoices disputed in good faith.

**4.7.3**  If ATC's charges or invoices to Contractor fall due or if Contractor owes money or is otherwise obligated to make payments to ATC when invoices rendered by ATC become payable, ATC may offset its invoices or the sums due or obligated, making remittance to Contractor only for any balance due. Where the balance is in ATC's favor, ATC shall so advise Contractor and Contractor shall remit to ATC the balance due. This offsetting of invoices or sums due or obligated shall not affect the right of either party to question the correctness of the invoices.

**4.7.4** To the extent permitted under the laws of the state in which the Work is located, Contractor hereby agrees to waive and does hereby waive any and all mechanics' liens and right to lien in connection with the Work, agrees not to file any such mechanics' lien and agrees to look solely to ATC for payment for services hereunder and not to the Work Site. Contractor hereby agrees to include similar waiver provisions in each and every Subcontract by which each Subcontractor, to the extent permitted under the laws of the state in which the Work is located, waives any and all mechanics' liens and right to lien in connection with the Work.

**4.8 Inspections and Tests**

**4.8.1** ATC and its agents, employees and representatives shall have access to the Work or Project Site, and Contractor shall provide proper facilities for such access and for inspection.

**4.8.2** ATC shall have the right to reject defective materials or workmanship and to require correction of such defects. Defective workmanship rejected by ATC shall be corrected to the reasonable satisfaction of ATC, and rejected materials shall be immediately removed from the Project Site without charge to ATC. If Contractor does not correct such defective workmanship within a reasonable time, or remove rejected materials immediately, ATC may correct such defective workmanship or remove such rejected materials and charge Contractor for all costs associated therewith, including, but not limited to, reasonable attorneys' fees. ATC, at any time before final acceptance of the entire Work, may make an examination of any items of Work already completed, and Contractor shall, upon request, promptly furnish all necessary facilities, labor and materials therefore. If such items of Work are found to be defective, Contractor shall pay for such examination, any demolition and any reconstruction.

**4.8.3** Contractor shall not be relieved of its warranty obligations regardless of whether or not ATC inspects the Work.

## ARTICLE 5: MODIFICATIONS TO THE WORK

5.1 ATC may order changes to the Work within the general scope of the Contract Documents by issuing Modifications to the applicable Schedule or PO, and shall promptly deliver a copy of such Modification to Contractor. Such Modifications shall be performed by Contractor without adjustment to the Contract Price or time to perform. Unless otherwise directed by ATC, Contractor shall not thereafter order materials or perform Work that would be inconsistent with such Modifications.

5.2 ATC may order Contractor to make Modifications, consisting of additions, deletions or other revisions outside the general scope of the Contract Documents, and the Contract Price and time to perform shall be equitably adjusted by ATC.

## ARTICLE 6: TERMINATION, REMEDIES, OR ASSIGNMENT OF THIS AGREEMENT

**6.1 Contractor's Termination Rights and Remedies**

If ATC does not pay Contractor, through no fault of Contractor, within seven (7) days from the time payment should be made as provided in the relevant Schedule or PO, Contractor may, without prejudice to other available remedies, upon seven (7) additional days written notice to ATC, stop the Work until payment of all undisputed amounts due Contractor have been paid.

**6.2 ATC's Termination Rights and Remedies**

If Contractor (a) defaults or neglects to carry out the Work in accordance with any relevant Schedule, PO or the Contract Documents, (b) fails to abide by or perform any of the terms and conditions of any of the Contract Documents, (c) fails to make payment when due to subcontractors or suppliers, or (d) files for bankruptcy protection, whether voluntarily or involuntarily, or makes an assignment for the benefit of creditors, or can no longer pay its debts as they become due, and fails within three (3) business days after receipt of written notice from ATC to

correct such default, ATC may, without prejudice to any other remedy ATC may have, take any or all of the following actions:

    A.    Withhold payment of the Contract Price;

    B.    Remedy such defaults, including payment of any claims, liens or stop notices, or other sums required to be paid by Contractor by the relevant Contract Documents, and deduct the cost thereof from any payment due to Contractor by ATC; and/or

    C.    Terminate this Agreement, or the relevant Schedule or PO, and take possession of the Work site(s) and all materials, tools, and equipment at the Site and complete the Work in whatever way it deems expedient. If the unpaid balance of the Contract Price(s) exceeds the expense of finishing Contractor's Work, such excess (less ATC's reasonable internal costs or expenses for coordinating the completion of the Work) shall be paid to Contractor, but if such expense exceeds such unpaid balance, Contractor shall pay the difference to ATC or, in ATC's sole discretion, ATC may deduct the cost thereof from any payment due by ATC to Contractor.

## 6.3 Assignment of this Agreement

Contractor shall not subcontract, assign or transfer the Work, any Schedule, PO or this Agreement, or any portion thereof, without the prior written consent of ATC which shall not be unreasonably withheld. ATC may freely assign this Agreement or any Schedule or PO to a third party without the prior or subsequent approval of Contractor.

## ARTICLE 7: THE WORK OF THIS AGREEMENT

7.1 Contractor shall execute the Work described in the applicable Schedule or PO and all Contract Documents, including all labor, materials, equipment, services and other items required to complete such Work. If applicable, Contractor acknowledges that it has received the relevant flow-down provisions of the Prime Contract between ATC and its Customer and agrees to be bound by all the terms and conditions of the Prime Contract insofar as each and every part thereof is applicable to this Agreement and to Contractor's Work. Contractor expressly assumes all obligations and responsibilities applicable to ATC under the Prime Contract and agrees that, in addition to any other rights and remedies afforded to ATC by this Agreement or law, ATC shall have the same rights and remedies against Contractor with respect to Contractor's Work that ATC's Customer has against ATC under the Prime Contract, all with the same force and effect as if set forth herein in full.

7.2 Contractor has carefully and thoroughly examined the Project, the nature and location of the Work, the local conditions, including those related to availability of transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads, and uncertainties of weather, or similar physical conditions at the Site, the conformation and conditions of the ground, the character of equipment and facilities needed preliminary to and during the prosecution of the Work, the difficulties of making and maintaining any required excavations, and all other matters required to perform the Work. Contractor has satisfied itself as to the character, quality, and quantities of Work to be performed, materials to be furnished, and as to the requirements of this Agreement. Contractor has used its own judgment obtaining and interpreting any necessary investigations or tests of the Site. By signing this Agreement, Contractor certifies that it has made such examination and is satisfied as to the conditions to be encountered in performing the Work, and as to the requirements of this Agreement.

## ARTICLE 8: DATE OF COMMENCEMENT AND COMPLETION

8.1 Contractor's date of commencement shall be the date defined in the applicable Schedule or PO, unless a provision is made in such Schedule or PO for the date to be fixed in a notice to proceed issued by ATC.

8.2 The Work shall be completed, subject to adjustment of the Contract Time as provided in the Contract Documents, not later than the date defined as the completion date in the applicable Schedule or PO.

8.3  Time is of the essence of this Agreement.

8.4  No extension of time will be authorized without ATC's prior written consent.

## ARTICLE 9:  CONTRACT PRICE & PAYMENT

9.1  Unless otherwise specified in the Schedule or PO, ATC shall pay Contractor the Contract Price in current funds for performance of the Work as defined in the applicable Schedule or PO, subject to additions and deletions as provided in the Contract Documents and payable as follows:

9.1.1    Eighty-five (85%) of the Contract price shall be paid upon satisfaction of all of the following:  (a) completion of the relevant Work, (b) inspection and approval by ATC's representative of the relevant Work, (c) acceptance of the relevant Work by ATC, (d) receipt by ATC of Contractor's invoice for the relevant Work, (e) receipt by ATC of all required releases, waivers of liens and other documents listed in the Contract Documents, and (e) no claims, stop notices or liens arising out of the relevant Work have been made or remain in effect; and

9.1.2    The final payment defined in the relevant Schedule or PO, which shall represent fifteen percent (15%) of the relevant Contract Price, shall be paid to Contractor upon satisfaction of all of the following, which shall be deemed conditions precedent to ATC's obligation to make final payment: (a) Contractor shall have executed and furnished ATC with a release and waiver of all liens and all claims against ATC and ATC's Customer for labor performed thereon or materials incorporated therein; (b) Contractor shall have furnished ATC with a release and waiver of all liens and all rights to claim or file liens for labor performed thereon or materials incorporated therein, properly executed by any and all of Contractor's subcontractors, material men, vendors or others who furnished labor or materials; (c) Contractor shall furnish evidence satisfactory to ATC that all such third parties have been paid in full, and (d) Contractor shall provide ATC with as-built drawings, certificates of occupancy and a completed punch list that has been accepted by ATC.

9.2  Unless otherwise specified in the Schedule or PO, all payments to be made to Contractor pursuant to this Article 9 shall be paid by ATC within forty-five (45) days following the satisfaction of all of the conditions precedent described above, provided, however, that, notwithstanding anything to the contrary, in the event that ATC disputes the amount invoiced to it by Contractor, ATC shall not be required to make any payments to Contractor for disputed amounts until such dispute is resolved.

9.3  The Contract Price and all specified pricing, including all Modifications to the applicable Schedule or PO, is understood by Contractor to include, without limitation, all sales taxes, use taxes, excise taxes, transportation taxes, unemployment compensation taxes, old age benefits and social security taxes, and Contractor agrees to pay all of the above and to conform to all local, state and federal laws in connection with the filing and payment of such taxes.

## ARTICLE 10:  DELAY

If Contractor is unavoidably delayed in performance hereunder by acts of God, public enemy, governmental authority, strikes or other events over which Contractor has no control, the completion date of the affected Work shall be reasonably extended by ATC, provided Contractor shall promptly notify ATC and shall take prompt action to minimize such delay; however, in no event shall Contractor receive any additional compensation because of such delay.  The foregoing is intended to exclude delays arising solely from weather conditions and it is expressly agreed that delays caused for this reason are to be anticipated by Contractor after considering prevailing weather and seasonal patterns or other information concerning the geographical area of the Work, and any costs or delays associated with weather conditions have been previously considered in the pricing and completion date represented on the relevant Schedule or PO.

## ARTICLE 11:  INSURANCE AND BONDS

11.1.1    Contractor shall, at its sole cost, purchase and maintain in full force during the Term of this Agreement the following insurance coverage, with limits of liability not less than those set forth below:

    (a)    **General Liability (Comprehensive Form)**
Including products/completed operations, contractual liability, broad form property damage and independent contractor's coverage.

        1.    Bodily Injury, each occurrence..............................................$1,000,000
        2.    Property Damage (including explosion,
Collapse and underground damage)
Each occurrence .....................................................................$1,000,000
Annual Aggregate....................................................................$2,000,000

            Or

        3.    Bodily Injury and Property Damage Combined:
Each Occurrence .....................................................................$1,000,000
Annual Aggregate....................................................................$2,000,000

    (b)    Automobile Liability (Comprehensive Form)

        1.    Bodily Injury,
Each person.............................................................................$1,000,000
Each occurrence .....................................................................$1,000,000

            And

        2.    Property Damage
Each oc

            Or

        3.    Bodily Injury and property Damage Combined:
Each Occurrence .....................................................................$1,000,000
Annual Aggregate....................................................................$1,000,000

    (c)    Umbrella Policy ...........................................................................$5,000,000

    (d)    Worker's Compensation............................................................Statutory
(including Longshoremen and Harbor Workers Act and the Jones Act coverages if applicable)

    (e)    Employer's Liability ...................................................................$500,000

    (f)    Professional Liability/Errors and Omissions (if applicable) ......................$1,000,000    For
Engineering and Geotechnical Services

11.1.2    Coverage shall be written on an occurrence basis and shall be maintained without interruption from the date of commencement of any Work until at least the date of final payment under this Agreement.

11.1.3    Prior to commencement of any Work, Contractor must deliver to ATC a valid certificate of insurance naming "American Tower Corporation and its subsidiary and affiliated companies" as additional insureds on all policies except Workers Compensation and Professional Liability, and shall contain a severability of interest provision and remove the cross liability exclusion. If required by ATC, Contractor agrees to name Project Site Owner and/or ATC's Customer as additional insureds. Contractor hereby represents that all subcontractors hired by Contractor to perform any portion of the Work shall maintain the same coverage, limits and endorsements as provided herein. These certificates, and the insurance policies required by this Article 11, shall contain a provision that coverage afforded under the policies will not be cancelled or allowed to expire until at least thirty (30) days prior written notice has been given to ATC. The

products/completed operations liability coverage shall be maintained in full force and effect for not less than three (3) years following completion of Contractor's Work.

11.1.4    All policies shall provide waivers of subrogation rights as against "American Tower Corporation and its subsidiary and affiliated companies" by endorsement or otherwise. If required by ATC, Contractor agrees to waive subrogation rights as against Project Site Owner and/or ATC's Customer. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

11.1.5    Subcontractor's compliance with this Article shall not constitute a limitation of liability or in any way limit or affect Contractor's indemnification obligations under this Agreement. The foregoing insurance coverage shall be primary and non-contributing with respect to any other insurance or self-insurance that may be maintained by the Project Site Owner, ATC's Customer or ATC.

11.1.6    Notwithstanding the foregoing insurance requirements, the insolvency, bankruptcy or failure of any insurance company providing insurance to Contractor, or failure of any such insurance company to pay claims accruing, shall not reduce or eliminate Contractor's obligations under this Agreement.

11.1.7    Contractor may be required to provide a Performance Bond and Payment Bond as described in the applicable Schedule or PO. Contractor shall promptly, upon request of ATC, furnish a copy, or permit a copy to be made, of any bond covering payment of obligations arising under this Agreement.

## ARTICLE 12: MISCELLANEOUS PROVISIONS

12.1.1    This Agreement, and the interpretation, performance and enforcement hereof, shall be governed by the laws of the state in which the real property that is the subject of the Work in controversy is located. In the event that the controversy involves one or more Project sites, the interpretation, performance and enforcement hereof, shall be governed by the laws of the Commonwealth of Massachusetts without regard to its conflicts of laws provisions.

12.1.2    It is expressly understood and agreed that Contractor is an independent contractor and ATC shall not be liable for any Contractor errors or omissions in the performance of the Work and at no time are Contractor, its employees, agents, or subcontractors authorized to act as agents, partners, co-venturers, servants or employees of ATC.

12.1.3    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

12.1.4    If any term or provision of this Agreement is adjudged to be invalid or unenforceable, such invalidity or unenforceability shall not affect any of the terms or provisions of this Agreement, and all other terms and provisions not so adjudged shall remain in full force and effect.

12.1.5    No waiver of any of the provisions of this Agreement or any Schedule or PO shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless expressly agreed to in writing by the affected party.

12.1.6    Contractor agrees that the information contained in the Contract Documents, the Drawings, Project Site Specifications, Specifications, ATC Customer information, and all other documents relating to the Work, including revisions and associated information, are proprietary and confidential ("Confidential Information"). Contractor agrees to use the Confidential Information only for the purpose of this Agreement. The Confidential Information is not to be reproduced in any form except as required to accomplish the intent of this Agreement. Contractor must provide the same care to avoid disclosure or unauthorized use of the Confidential Inform information.

12.1.7  Contractor agrees not to publish or release to the press any information that identifies ATC's Customer or ATC or implies the name of ATC's Customer or ATC without the prior written consent of ATC.

12.1.8  During the Term of this Agreement, and for a period of one (1) year thereafter, Contractor shall not solicit or hire, directly or indirectly, ATC employees.

12.1.9  The provisions of this Agreement which by their nature are intended to survive the termination, cancellation, completion or expiration of this Agreement, including but not limited to any expressed limitations of or releases from liability, indemnifications and warranties shall continue as valid and enforceable obligations of the Parties notwithstanding any such termination, cancellation, completion or expiration.

12.1.10 The Parties acknowledge and agree that terms and conditions of this Agreement have been freely and fairly negotiated. Each Party acknowledges that in executing this Agreement they have relied solely on their own judgment, belief and knowledge and such advice as they may have received from their own counsel. No provision in this Agreement is to be interpreted for or against any Party because that Party or its legal counsel drafted such provision. This Agreement is intended by the Parties as the final, complete and exclusive expression of the terms and conditions of their agreement. No prior dealings between the Parties and no usage of the trade shall be relevant to supplement this Agreement, and this Agreement shall supersede all other written and/or oral agreements between ATC and Contractor. Unless otherwise agreed to in writing by ATC, any terms or qualifications contained in any documentation generated by Contractor in connection with this Agreement that are different, conflicting or additional with the terms hereof are hereby rejected, and shall be void and of no effect.

This Agreement entered into as of the day and year first written above except that this Agreement shall not become effective as to either party until executed by both parties.

ATC                                              CONTRACTOR
American Power Corporation and its subsidiary and
affiliated companies
By: _____                     By: _____

Name: _____                     Name: _____

Title: _____                     Title: _____
      **Sharon Bracken**

| **Contractor Development Manager**

**Addendum to Master Contractors Agreement or Site Access Agreement**

This Addendum ("Addendum") is entered into as of __January 28_____, 2004__ by and between American Towers, Inc., a Delaware corporation ("ATC"), and JLB Construction Inc., a Iowa Corporation _____ ("Contractor").

WITNESSETH:

WHEREAS, ATC and Contractor entered into either that certain Master Contractor Agreement or Site Access Agreement dated as of ~~January 28, 2004~~_____ (the "Agreement"); and

_1/1/03_

WHEREAS, ATC and Contractor wish to promote increased safety in the tower industry with a goal towards reducing serious injury and deaths; and

WHEREAS, ATC and Contractor wish certain individuals to participate in training to help ensure that tower climbers have basic skills and competence in safe tower climbing methods and equipment related thereto; and

WHEREAS, ATC and Contractor wish to memorialize new terms and conditions covering all employees, agents, contractors or subcontractors of Contractor who will climb six (6) feet and above on ATC-owned or –managed towers or while working on any job for which ATC is either a contractor or subcontractor;

NOW, THEREFORE, in consideration of the foregoing and for other consideration, the receipt and sufficiency of which are hereby acknowledged, ATC and Contractor agree that the following terms shall apply to the Agreement:

1.      Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Agreement.

2.      Training Requirement. Effective March 1, 2004, all employees, agents, contractors or subcontractors of Contractor who need to climb six (6) feet or higher on an ATC-owned or –managed tower or while working on any job for which ATC is either a contractor or subcontractor must have received training from an ATC-Approved Competent Tower Climber Organization. ATC only recognizes training provided by a Bechtel-Approved Competent Training Organization, a list of which can be obtained by Contractor from ATC.

3.      Demonstration of Compliance. Effective March 1, 2004, each tower climber must have in their possession a wallet card or other documentation indicating that they have received the appropriate Competent Tower Climber Training. Individuals without such documentation shall be removed from ATC-owned or –managed tower sites or from jobsites for which ATC is either a contractor of subcontractor. ATC shall not be liable for any costs, fees or expenses incurred by Contractor, or by Contractor's contractors or subcontractors, as a result of any such removal.

4.      ATC and Contractor agree that all other terms and conditions of the Agreement, not otherwise inconsistent with this Addendum, shall remain in full force and effect by and between the parties.

IN WITNESS WHEREOF, the parties hereunto have executed this Addendum as of the date first written above.

American Towers, Inc.

By: _____

Name: _____

Contractor

By: _____

Name: _____ Jason Bentley _____

# ATC TOWER
SERVICES, INC.™

**ATC Construction Services**
3200 Cobb Galleria Parkway, Suite 205
Atlanta, GA 30339
PH: 770.953.9400 FAX: 770.859.9812

VENDOR:

JLB CONSTRUCTION INC
2327 FALLS AVENUE
SUITE 4
WATERLOO, IA 50701
United States

## PURCHASE ORDER

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 54318 | 0 | 1 of 1 |

This Purchase Order Number must appear on all order acknowledgements, packing lists, cartons, and correspondence.

**SHIP TO:**
6706 N. 9th Avenue, Suite B5
Pensacola, FL 32503
United States

**BILL TO:**  PO BOX 724267
Atlanta ,GA 31139
United States

**FED ID #:**    030427091

| SUPPLIER NO. | PROJECT # | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|---|
| 53780 | 22792 | 23-APR-04    Maxwell, L | |

| PAYMENT TERMS | SHIP METHOD | F.O.B |
|---|---|---|
| Net 30 | | FOB DESTINATION |

| FREIGHT TERMS | REQUESTOR/DELIVERY | CONFIRM TO/TELEPHONE |
|---|---|---|
| | Bell, Troy | (866) 234-6704 |

| ITEM | PART NUMBER/DESCRIPTION | DELIVERY DATE | QUANTITY | UOM | UNIT PRICE | EXTENDED | T |
|---|---|---|---|---|---|---|---|
| 1 | BAYOU LABATRE - ANTENNA & LINE INSTALL PER SCOPE OF WORK o SHIP TO: Address at top of page | 23-APR-04 | | | | 17,500.00 | Y |

For questions regarding this PO, please contact your Project Manager

| **TOTAL** | 17,500.00 |
|---|---|

This document was duplicated electronically and faxed to the number listed below
Supplier Fax#: (319) 232-6774

**AUTHORIZED SIGNATURE**

Please refer to the following page for the Terms and Conditions of this Purchase Order

1. AGREEMENT. This Purchase Order (Order), including the terms and conditions on the face and reverse side hereof and any attachments hereto, contains the complete agreement between American Tower, Inc. (ATC) and the Seller and supersedes all prior agreements.

2. TIME. Time is of the essence of this Order.

3. ACCEPTANCE. This Order shall be acknowledged and becomes a binding contract subject to the terms set forth herein when acknowledged in writing or upon commencement of performance by Seller. No change in the Order shall be valid unless agreed to in writing and signed by an authorized representative of ATC.

4. DEFINITIONS. As used herein, the term "contract" shall mean this Order, and the term "goods" shall mean and include all supplies, materials, work, services, equipment or other items whatsoever to be furnished by Seller under this Order.

5. INSPECTION. Notwithstanding any prior inspection or test, payment or receiving document, goods are subject to final inspection and acceptance at the destination for delivery stated herein. Payment for goods shall not constitute acceptance.

6. WARRANTIES. (a) Notwithstanding inspection and acceptance by ATC of goods furnished under this Order or any provision of this Order concerning the conclusiveness thereof, Seller warrants that all goods furnished will be merchantable quality, will be fit for the purpose intended, and will be free from defects in material, workmanship and design, and conform in all aspects with the specifications and requirements of this Order.

(b) Seller further warrants that all material and equipment furnished will be of the highest workmanlike quality and acceptable to ATC.

(c) All Warranties hereunder shall be for a period of one (1) year from the date of delivery or the placement in service of the goods, whichever is later, and shall be warranties of future performance for each warranty year.

(e) In the event of a breach of warranty hereunder, ATC may, at no increase in Order price or other cost to ATC, either: (1) require the prompt correction or replacement of defective or otherwise nonconforming goods or parts thereof, along with such new or revised data as is associated with the corrective action taken; or (2) retain such goods, whereupon the price thereof shall be reduced by an amount equitable under the circumstances; or (3) correct or replace such goods with similar goods, by contract or otherwise, and charge to Seller for all additional costs caused thereby to ATC.

(f) Any goods or parts thereof corrected or furnished in replacement pursuant to this clause shall be subject to all the provisions of this clause to the same extent as goods initially delivered. The warranty with respect to such goods or parts thereof shall be equal in duration to the initial warranty period and shall run from the date of delivery or placement in service of such corrected or replaced goods, whichever is later.

(g) ATC approval of Seller-generated designs, drawings or other technical documents shall in no way relieve Seller of its obligations under this or any other clause of this Order.

7. UNDERTAKINGS. In all cases wherein ATC is a prime or subcontractor to an Owner and the items hereunder are required by the Prime Contract, then Seller undertakes to ATC all obligations with respect to the items as ATC as subcontractor or as prime contractor, as the case may be, undertakes to the prime contractor or the Owner.

8. SCHEDULE & EXPEDITING. Seller shall keep ATC informed as to the status of the items hereunder and Seller's schedule of activities to assure delivery by the time required herein. Without any responsibility to do so, ATC reserves the right to take steps to expedite acquisition, production and/or shipment of the items, if, in ATC's sole judgment, delivery of the completed items by the date required becomes doubtful. Seller shall reimburse ATC for all costs it may incur in expediting acquisition, production or shipment of the items.

9. CHANGES. ATC reserves the right at any time prior to delivery, by written order, to cancel, suspend, revise or change the goods or quantity of goods to be furnished by Seller hereunder, and in no event shall ATC be responsible for loss of anticipated profits or consequential damages. In the event of a revision to this Order by ATC, ATC shall be responsible only for the price of the goods accepted. Any increase in the price of the goods resulting from a revision is subject to the approval of ATC. Failure to agree to any adjustment shall be a dispute within the meaning of the "Disputes" clause hereof. Pending resolution of the dispute, the Seller shall not be excused from proceeding with the order as changed.

10. BANKRUPTCY. ATC may terminate this Purchase Order in whole or in part by written notice: (a) if the Seller shall become insolvent or make a general assignment for the benefit of creditors; or (b) if a petition under any bankruptcy act or similar statute is filed by or against the Seller and is not vacated within ten (10) days after it is filed.

11. PRICES. Seller warrants that the prices of the items covered by this Order are not in excess of Seller's lowest prices in effect on the date of this Order for comparable quantities of similar items or services, and are not in excess of prices charged by Seller for similar items to Seller's most favored customers.

12. INVOICING AND PAYMENT. A separate invoice shall be issued for each shipment. Unless otherwise specified, an invoice shall not be issued prior to shipment of items and payment will not be made prior to receipt and acceptance of the items and a correct invoice. Credit and discount periods shall be computed from the date of receipt of the correct invoice to the date ATC's check is mailed. Unless freight and other charges are separately itemized, discount shall be taken on full amount of invoice.

13. ASSIGNMENT. Neither this Order nor any interest herein nor claim thereunder shall be assigned or transferred by Seller, except as expressly authorized in writing by ATC.

14. ADVERTISING AND PUBLICITY. Seller shall not, without written consent of ATC, publish the fact that ATC has placed this order with Seller, or release any information relative thereto. Seller shall not use the name of ATC or its parent organization, American Tower, Inc., or affiliates in any advertising or promotional literature.

15. PATENT INFRINGEMENT. Seller agrees to indemnify, defend and hold harmless ATC, its officers, agents, employees, successors and assigns against loss, damage or liability, including costs, expenses and attorney's fees on account of any suit, claim, judgment or demand involving the al eged infringement of any patent rights in the manufacture, delivery, use or dispos tion of any item or material supplied hereunder.

16. INDEMNITY. The Seller shall defend, save and hold ATC harmless from and against all suits or claims arising out of or relating to manuals, writings or the design of the goods furnished hereunder whether based upon any alleged injury to or death of any persons or damage to property that may occur, or that may be alleged to have occurred in the course of the performance of the work or thereafter, whether such claims shall be made by an employee of the Seller, or by any other person. The Seller shall, at its own cost and expense, pay all costs incurred by ATC in connection therewith. If any judgment shall be rendered against ATC in any such action, the Seller shall satisfy and discharge the same without cost or expense to ATC.

17. CONSEQUENTIAL DAMAGES. Notwithstanding any other provision herein, ATC shall under no circumstances be responsible to Seller for any consequential, indirect or special damages.

18. DELIVERY. Delivery shall be to the project site Free on Board (F.O.B.) unless otherwise designated in this Order.

19. TITLE AND RISK OF LOSS. Title to and risk of loss on all goods shipped by Seller to ATC shall not pass to ATC until ATC inspects and accepts such goods at the location designated by ATC.

20. TAXES. Except as otherwise provided in this Order, the prices herein include all federal, state and local taxes applicable to the goods purchased herein. All taxes shall be listed separately on Seller's invoice. If not listed, Seller assumes responsibility for their payment and shall indemnify and hold ATC harmless from all tax liability arising out of or related to the Order.

21. DISPUTES. Either party may litigate any dispute arising under or related to this Order or the breach thereof in a court of competent jurisdiction. Pending settlement of any such dispute by agreement or a final judgment, Seller shall proceed diligently with the performance hereof according to ATC's direction.

22. COMPLIANCE WITH LAWS. Seller agrees to comply with all applicable local, state and federal laws and executive orders and regulations issued pursuant thereto and agrees to indemnify ATC against any liability, loss, cost, damage or expense by reason of Seller's violation of this provision.

23. GOVERNING LAW. This Order shall be governed by the aws of the Commonwealth of Massachusetts.

24. SEVERABILITY. If any provision of this Order, or any part thereof, shall be invalid or unenforceable, such provision or part shall be deemed severed, and the remainder hereof shall be given full force and effect.

25. GOVERNMENT WORK. Seller agrees that any part of the articles or work hereby ordered which is intended for use on Government work shall, at all times, be subject to such changes, suspensions, terminations, and cancellation of the uncompleted portion as the Government requires. Seller shall not be entitled to any additional compensation for complying with such acts by the Government unless compensation is paid by the Government to the prime contractor for Seller's additional costs, and only to the extent compensation is so paid. Seller agrees to comply with all applicable statutes and valid governmental rules, regulations, requirements, provisions and conditions required by law to be included in this order, which are expressly incorporated herein.

26. MISCELLANEOUS PROVISIONS. A Seller shall comply with the Fair Labor Standards Act, particularly sections 6, 7 and 12 thereof, and all other applicable Federal, state and local laws, regulations and orders and shall, upon request, furnish to Buyer a certificate to such effect. The Equal Opportunity clause in Title 41, Part 60-1.4 of the Code of Federal Regulations (Paragraphs 1 through 7 of President's Executive Order 11246), the Employment of the Handicapped clause in Title 20, Part 741.3 of the Code of Federal Regulations, listing of Employment Openings for Veterans clause in Title 41, Part 50-250.2, of the code of Federal Regulations and Disabled Veterans and Veterans of the Vietnam Era Clause in Title 41, Part 60-250, of the Code of Federal Regulations are incorporated herein by reference if and to the extent applicable. When applicable, Seller shall not discriminate against any employee or applicant for employment because of physical or mental handicap; and shall establish an affirmative action program applicable thereto, all as set forth in Part 741, Subchapter C, Chapter VI, Title 20 of the Code of Federal Regulations.

27. ACCEPTANCE OF ORDER. By accepting this Order, Seller accepts all terms and conditions printed on both the face and reverse side hereof, and to all riders and attachments hereto issued by ATC, notwithstanding any proposal of the Seller for additional or different terms which shall not become part of this Order unless expressly agreed to in writing by ATC.

# ATC TOWER
### SERVICES, INC.™

ATC Construction Services
3200 Cobb Galleria Parkway, Suite 205
Atlanta, GA 30339
PH: 770.953.9400 FAX: 770.859.9812

VENDOR:

JLB CONSTRUCTION INC
2327 FALLS AVENUE
SUITE 4
WATERLOO, IA 50701
United States

## PURCHASE ORDER

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| 54321 | 2 | 1 of 1 |

This Purchase Order Number must appear on all order acknowledgements, packing lists, cartons, and correspondence.

**SHIP TO:**
6706 N. 9th Avenue, Suite B5
Pensacola,FL 32503
United States

**BILL TO:**   PO BOX 724267
Atlanta ,GA 31139
United States

**FED ID #:**   C30427091

| SUPPLIER NO. | PROJECT # | DATE OF ORDER/BUYER | REVISED DATE/BUYER |
|---|---|---|---|
| 53780 | 22791 | 23-APR-04   Maxwell, L | 14-OCT-04   Maxwell, L |

| PAYMENT TERMS | SHIP METHOD | F.O.B |
|---|---|---|
| Net 30 | | FOB DESTINATION |

| FREIGHT TERMS | REQUESTOR/DELIVERY | CONFIRM TO/TELEPHONE |
|---|---|---|
| | Bell, Troy | (866) 234-6704 |

| ITEM | PART NUMBER/DESCRIPTION | DELIVERY DATE | QUANTITY | UOM | UNIT PRICE | EXTENDED | T |
|---|---|---|---|---|---|---|---|
| 1 | CHAPEL CHURCH - ANTENNA & LINE INSTALLATION PER SCOPE OF WORK o SHIP TO: Address at top of page | 23-APR-04 | | | | 3,944.15 | Y |

| | TOTAL | 3,944.15 |
|---|---|---|

For questions regarding this PO, please contact your Project Manager

This document was duplicated electronically and faxed to the number listed below
Supplier Fax#: (319) 232-6774

**AUTHORIZED SIGNATURE**

Please refer to the following page for the Terms and Conditions of this Purchase Order

1. AGREEMENT. This Purchase Order (Order), including the terms and conditions on the face and reverse side hereof and any attachments hereto, contains the complete agreement between American Tower, Inc. (ATC) and the Seller and supersedes all prior agreements.

2. TIME. Time is of the essence of this Order.

3. ACCEPTANCE. This Order shall be acknowledged and becomes a binding contract subject to the terms set forth herein when acknowledged in writing or upon commencement of performance by Seller. No change in the Order shall be valid unless agreed to in writing and signed by an authorized representative of ATC.

4. DEFINITIONS. As used herein, the term "contract" shall mean this Order, and the term "goods" shall mean and include all supplies, materials, work, services, equipment or other items whatsoever to be furnished by Seller under this Order.

5. INSPECTION. Notwithstanding any prior inspection or test, payment or receiving document, goods are subject to final inspection and acceptance at the destination for delivery stated herein. Payment for goods shall not constitute acceptance.

6. WARRANTIES. (a) Notwithstanding inspection and acceptance by ATC of goods furnished under this Order or any provision of this Order concerning the conclusiveness thereof, Seller warrants that all goods furnished will be merchantable quality, will be fit for the purpose intended, and will be free from defects in material, workmanship and design, and conform in all aspects with the specifications and requirements of this Order.

(b) Seller further warrants that all material and equipment furnished will be of the highest workmanlike quality and acceptable to ATC.

(c) All Warranties hereunder shall be for a period of one (1) year from the date of delivery or the placement in service of the goods, whichever is later, and shall be warranties of future performance for each warranty year.

(e) In the event of a breach of warranty hereunder, ATC may, at no increase in Order price or other cost to ATC, either: (1) require the prompt correction or replacement of defective or otherwise nonconforming goods or parts thereof, along with such new or revised data as is associated with the corrective action taken; or (2) retain such goods, whereupon the price thereof shall be reduced by an amount equitable under the circumstances; or (3) correct or replace such goods with similar goods, by contract or otherwise, and charge to Seller for all additional costs caused thereby to ATC.

(f) Any goods or parts thereof corrected or furnished in replacement pursuant to this clause shall be subject to all the provisions of this clause to the same extent as goods initially delivered. The warranty with respect to such goods or parts thereof shall be equal in duration to the initial warranty period and shall run from the date of delivery or placement in service of such corrected or replaced goods, whichever is later.

(g) ATC approval of Seller-generated designs, crawings or other technical documents shall in no way relieve Seller of its obligations under this or any other clause of this Order.

7. UNDERTAKINGS. In all cases wherein ATC is a prime or subcontractor to an Owner and the items hereunder are required by the Prime Contract, then Seller undertakes to ATC all obligations with respect to the items as ATC as subcontractor or as prime contractor, as the case may be, undertakes to the prime contractor or the Owner.

8. SCHEDULE & EXPEDITING. Seller shall keep ATC informed as to the status of the items hereunder and Seller's schedule of activities to assure delivery by the time required herein. Without any responsibility to do so, ATC reserves the right to take steps to expedite acquisition, production and/or shipment of the items, if, in ATC's sole judgment, delivery of the completed items by the date required becomes doubtful. Seller shall reimburse ATC for all costs it may incur in expediting acquisition, production or shipment of the items.

9. CHANGES. ATC reserves the right at any time prior to delivery, by written order, to cancel, suspend, revise or change the goods or quantity of goods to be furnished by Seller hereunder, and in no event shall ATC be responsible for loss of anticipated profits or consequential damages. In the event of a revision to this Order by ATC, ATC shall be responsible only for the price of the goods accepted. Any increase in the price of the goods resulting from a revision is subject to the approval of ATC. Failure to agree to any adjustment shall be a dispute within the meaning of the "Disputes" clause hereof. Pending resolution of the dispute, the Seller shall not be excused from proceeding with the order as changed.

10. BANKRUPTCY. ATC may terminate this Purchase Order in whole or in part by written notice: (a) if the Seller shall become insolvent or make a general assignment for the benefit of creditors; or (b) if a petition under any bankruptcy act or similar statute is filed by or against the Seller and is not vacated within ten (10) days after it is filed.

11. PRICES. Seller warrants that the prices of the items covered by this Order are not in excess of Seller's lowest prices in effect on the date of this Order for comparable quantities of similar items or services, and are not in excess of prices charged by Seller for similar items to Seller's most favored customers.

12. INVOICING AND PAYMENT. A separate invoice shall be issued for each shipment. Unless otherwise specified, an invoice shall not be issued prior to shipment of items and payment will not be made prior to receipt and acceptance of the items and a correct invoice. Credit and discount periods shall be computed from the date of receipt of the correct invoice to the date ATC's check is mailed. Unless freight and other charges are separately itemized, discount shall be taken on full amount of invoice.

13. ASSIGNMENT. Neither this Order nor any interest herein nor claim thereunder shall be assigned or transferred by Seller, except as expressly authorized in writing by ATC.

14. ADVERTISING AND PUBLICITY. Seller shall not, without written consent of ATC, publish the fact that ATC has placed this order with Seller, or release any information relative thereto. Seller shall not use the name of ATC or its parent organization, American Tower, Inc., or affiliates in any advertising or promotional literature.

15. PATENT INFRINGEMENT. Seller agrees to indemnify, defend and hold harmless ATC, its officers, agents, employees, successors and assigns against loss, damage or liability, including costs, expenses and attorney's fees on account of any suit, claim, judgment or demand involving the alleged infringement of any patent rights in the manufacture, delivery, use or disposition of any item or material supplied hereunder.

16. INDEMNITY. The Seller shall defend, save and hold ATC harmless from and against all suits or claims arising out of or relating to manuals, writings or the design of the goods furnished hereunder whether based upon any alleged injury to or death of any persons or damage to property that may occur, or that may be alleged to have occurred in the course of the performance of the work or thereafter, whether such claims shall be made by an employee of the Seller, or by any other person. The Seller shall, at its own cost and expense, pay all costs incurred by ATC in connection therewith. If any judgment shall be rendered against ATC in any such action, the Seller shall satisfy and discharge the same without cost or expense to ATC.

17. CONSEQUENTIAL DAMAGES. Notwithstanding any other provision herein, ATC shall under no circumstances be responsible to Seller for any consequential, indirect or special damages.

18. DELIVERY. Delivery shall be to the project site Free on Board (F.O.B.) unless otherwise designated in this Order.

19. TITLE AND RISK OF LOSS. Title to and risk of loss on all goods shipped by Seller to ATC shall not pass to ATC until ATC inspects and accepts such goods at the location designated by ATC.

20. TAXES. Except as otherwise provided in this Order, the prices herein include all federal, state and local taxes applicable to the goods purchased herein. All taxes shall be listed separately on Seller's invoice. If not listed, Seller assumes responsibility for their payment and shall indemnify and hold ATC harmless from all tax liability arising out of or related to the Order.

21. DISPUTES. Either party may litigate any dispute arising under or related to this Order or the breach thereof in a court of competent jurisdiction. Pending settlement of any such dispute by agreement or a final judgment, Seller shall proceed diligently with the performance hereof according to ATC's direction.

22. COMPLIANCE WITH LAWS. Seller agrees to comply with all applicable local, state and federal laws and executive orders and regulations issued pursuant thereto and agrees to indemnify ATC against any liability, loss, cost, damage or expense by reason of Seller's violation of this provision.

23. GOVERNING LAW. This Order shall be governed by the laws of the Commonwealth of Massachusetts.

24. SEVERABILITY. If any provision of this Order, or any part thereof, shall be invalid or unenforceable, such provision or part shall be deemed severed, and the remainder hereof shall be given full force and effect.

25. GOVERNMENT WORK. Seller agrees that any part of the articles or work hereby ordered which is intended for use on Government work shall, at all times, be subject to such changes, suspensions, terminations, and cancellation of the uncompleted portion as the Government requires. Seller shall not be entitled to any additional compensation for complying with such acts by the Government unless compensation is paid by the Government to the prime contractor for Seller's additional costs, and only to the extent compensation is so paid. Seller agrees to comply with all applicable statutes and valid governmental rules, regulations, requirements, provisions and conditions required by law to be included in this order, which are expressly incorporated herein.

26. MISCELLANEOUS PROVISIONS. A Seller shall comply with the Fair Labor Standards Act, particularly sections 6, 7 and 12 thereof, and all other applicable Federal, state and local laws, regulations and orders and shall, upon request, furnish to Buyer a certificate to such effect. The Equal Opportunity clause in Title 41, Part 60-1.4 of the Code of Federal Regulations (Paragraphs 1 through 7 of President's Executive Order 11246); the Employment of the Handicapped clause in Title 20, Part 741.3 of the Code of Federal Regulations, listing of Employment Openings for Veterans clause in Title 41, Part 50-250.2, of the code of Federal Regulations and Disabled Veterans and Veterans of the Vietnam Era Clause in Title 41, Part 60-250, of the Code of Federal Regulations are incorporated herein by reference if and to the extent applicable. When applicable, Seller shall not discriminate against any employee or applicant for employment because of physical or mental handicap; and shall establish an affirmative action program applicable thereto, all as set forth in Part 741, Subchapter C, Chapter VI, Title 20 of the Code of Federal Regulations.

27. ACCEPTANCE OF ORDER. By accepting this Order, Seller accepts all terms and conditions printed on both the face and reverse side hereof, and to all riders and attachments hereto issued by ATC, notwithstanding any proposal of the Seller for additional or different terms which shall not become part of this Order unless expressly agreed to in writing by ATC.

# ATC TOWER
### SERVICES, INC.™

**ATC Construction Services**
3200 Cobb Galleria Parkway, Suite 205
Atlanta, GA 30339
PH: 770.953.9400 FAX: 770.859.9812

VENDOR:

JLB CONSTRUCTION INC
2327 FALLS AVENUE
SUITE 4
WATERLOO, IA 50701
United States

## PURCHASE ORDER

| PURCHASE ORDER NUMBER | REVISION | PAGE |
|---|---|---|
| **50639** | 0 | 1 of 1 |

This Purchase Order Number must appear on all order acknowledgements, packing lists, cartons, and correspondence.

SHIP TO:
19951 W. 162nd Street
Olathe, KS 66062
United States

BILL TO: PO BOX 724267
Atlanta ,GA 31139
United States

FED ID #:    030427091

| SUPPLIER NO. 53780 | PROJECT # 22680 | DATE OF ORDER/BUYER 04-MAR-04    Cole, T | REVISED DATE/BUYER |
|---|---|---|---|

| PAYMENT TERMS Net 30 | SHIP METHOD | F.O.B FOB DESTINATION |
|---|---|---|

| FREIGHT TERMS | REQUESTOR/DELIVERY Westberry, James E | CONFIRM TO/TELEPHONE (866) 234-6704 |
|---|---|---|

| ITEM | PART NUMBER/DESCRIPTION | DELIVERY DATE | QUANTITY | UOM | UNIT PRICE | EXTENDED | T |
|---|---|---|---|---|---|---|---|
| 1 | 22680 antenna and lines China Wok o SHIP TO: Address at top of page | 04-MAR-04 | | | | 4,550.00 | Y |
| 2 | deliver site close out documents as required for work in line 1 o SHIP TO: Address at top of page | 04-MAR-04 | | | | 975.00 | Y |
| 3 | final punch list completion, site acceptance and cleanup o SHIP TO: Address at top of page | 04-MAR-04 | | | | 975.00 | Y |

| | | |
|---|---|---|
| For questions regarding this PO, please contact your Project Manager | **TOTAL** | **6,500.00** |

This document was duplicated electronically and faxed to the number listed below
Supplier Fax#:  (319) 232-6774

AUTHORIZED SIGNATURE

Please refer to the following page for the Terms and Conditions of this Purchase Order

1. AGREEMENT. This Purchase Order (Order), including the terms and conditions on the face and reverse side hereof and any attachments hereto, contains the complete agreement between American Tower, Inc. (ATC) and the Seller and supersedes all prior agreements.

2. TIME. Time is of the essence of this Order.

3. ACCEPTANCE. This Order shall be acknowledged and becomes a binding contract subject to the terms set forth herein when acknowledged in writing or upon commencement of performance by Seller. No change in the Order shall be valid unless agreed to in writing and signed by an authorized representative of ATC.

4. DEFINITIONS. As used herein, the term "contract" shall mean this Order, and the term "goods" shall mean and include all supplies, materials, work, services, equipment or other items whatsoever to be furnished by Seller under this Order.

5. INSPECTION. Notwithstanding any prior inspection or test, payment or receiving document, goods are subject to final inspection and acceptance at the destination for delivery stated herein. Payment for goods shall not constitute acceptance.

6. WARRANTIES. (a) Notwithstanding inspection and acceptance by ATC of goods furnished under this Order or any provision of this Order concerning the conclusiveness thereof, Seller warrants that all goods furnished will be merchantable quality, will be fit for the purpose intended, and will be free from defects in material, workmanship and design, and conform in all aspects with the specifications and requirements of this Order.

(b) Seller further warrants that all material and equipment furnished will be of the highest workmanlike quality and acceptable to ATC.

(c) All Warranties hereunder shall be for a period of one (1) year from the date of delivery or the placement in service of the goods, whichever is later, and shall be warranties of future performance for each warranty year.

(e) In the event of a breach of warranty hereunder, ATC may, at no increase in Order price or other cost to ATC, either: (1) require the prompt correction or replacement of defective or otherwise nonconforming goods or parts thereof, along with such new or revised data as is associated with the corrective action taken; or (2) retain such goods, whereupon the price thereof shall be reduced by an amount equitable under the circumstances; or (3) correct or replace such goods with similar goods, by contract or otherwise, and charge to Seller for all additional costs caused thereby to ATC.

(f) Any goods or parts thereof corrected or furnished in replacement pursuant to this clause shall be subject to all the provisions of this clause to the same extent as goods initially delivered. The warranty with respect to such goods or parts thereof shall be equal in duration to the initial warranty period and shall run from the date of delivery or placement in service of such corrected or replaced goods, whichever is later.

(g) ATC approval of Seller-generated designs, drawings or other technical documents shall in no way relieve Seller of its obligations under this or any other clause of this Order.

7. UNDERTAKINGS. In all cases wherein ATC is a prime or subcontractor to an Owner and the items hereunder are required by the Prime Contract, then Seller undertakes to ATC all obligations with respect to the items as ATC as subcontractor or as prime contractor, as the case may be, undertakes to the prime contractor or the Owner.

8. SCHEDULE & EXPEDITING. Seller shall keep ATC informed as to the status of the items hereunder and Seller's schedule of activities to assure delivery by the time required herein. Without any responsibility to do so, ATC reserves the right to take steps to expedite acquisition, production and/or shipment of the items, if, in ATC's sole judgment, delivery of the completed items by the date required becomes doubtful. Seller shall reimburse ATC for all costs it may incur in expediting acquisition, production or shipment of the items.

9. CHANGES. ATC reserves the right at any time prior to delivery, by written order, to cancel, suspend, revise or change the goods or quantity of goods to be furnished by Seller hereunder, and in no event shall ATC be responsible for loss of anticipated profits or consequential damages. In the event of a revision to this Order by ATC, ATC shall be responsible only for the price of the goods accepted. Any increase in the price of the goods resulting from a revision is subject to the approval of ATC. Failure to agree to any adjustment shall be a dispute within the meaning of the "Disputes' clause hereof. Pending resolution of the dispute, the Seller shall not be excused from proceeding with the order as changed.

10. BANKRUPTCY. ATC may terminate this Purchase Order in whole or in part by written notice: (a) if the Seller shall become insolvent or make a general assignment for the benefit of creditors; or (b) if a petition under any bankruptcy act or similar statute is filed by or against the Seller and is not vacated within ten (10) days after it is filed.

11. PRICES. Seller warrants that the prices of the items covered by this Order are not in excess of Seller's lowest prices in effect on the date of this Order for comparable quantities of similar items or services, and are not in excess of prices charged by Seller for similar items to Seller's most favored customers.

12. INVOICING AND PAYMENT. A separate invoice shall be issued for each shipment. Unless otherwise specified, an invoice shall not be issued prior to shipment of items and payment will not be made prior to receipt and acceptance of the items and a correct invoice. Credit and discount periods shall be computed from the date of receipt of the correct invoice to the date ATC's check is mailed. Unless freight and other charges are separately itemized, discount shall be taken on full amount of invoice.

13. ASSIGNMENT. Neither this Order nor any interest herein nor claim thereunder shall be assigned or transferred by Seller, except as expressly authorized in writing by ATC.

14. ADVERTISING AND PUBLICITY. Seller shall not, without written consent of ATC, publish the fact that ATC has placed this order with Seller, or release any information relative thereto. Seller shall not use the name of ATC or its parent organization, American Tower, Inc., or affiliates in any advertising or promotional literature.

15. PATENT INFRINGEMENT. Seller agrees to indemnify, defend and hold harmless ATC, its officers, agents, employees, successors and assigns against loss, damage or liability, including costs, expenses and attorney's fees on account of any suit, claim, judgment or demand involving the alleged infringement of any patent rights in the manufacture, delivery, use or disposition of any item or material supplied hereunder.

16. INDEMNITY. The Seller shall defend, save and hold ATC harmless from and against all suits or claims arising out of or relating to manuals, writings or the design of the goods furnished hereunder whether based upon any alleged injury to or death of any persons or damage to property that may occur, or that may be alleged to have occurred in the course of the performance of the work or thereafter, whether such claims shall be made by an employee of the Seller, or by any other person. The Seller shall, at its own cost and expense, pay all costs incurred by ATC in connection therewith. If any judgment shall be rendered against ATC in any such action, the Seller shall satisfy and discharge the same without cost or expense to ATC.

17. CONSEQUENTIAL DAMAGES. Notwithstanding any other provision herein, ATC shall under no circumstances be responsible to Seller for any consequential, indirect or special damages.

18. DELIVERY. Delivery shall be to the project site Free on Board (F.O.B.) unless otherwise designated in this Order

19. TITLE AND RISK OF LOSS. Title to and risk of loss on all goods shipped by Seller to ATC shall not pass to ATC until ATC inspects and accepts such goods at the location designated by ATC.

20. TAXES. Except as otherwise provided in this Order, the prices herein include all federal, state and local taxes applicable to the goods purchased herein. All taxes shall be listed separately on Seller's invoice. If not listed, Seller assumes responsibility for their payment and shall indemnify and hold ATC harmless from all tax liability arising out of or related to the Order.

21. DISPUTES. Either party may litigate any dispute arising under or related to this Order or the breach thereof in a court of competent jurisdiction. Pending settlement of any such dispute by agreement or a final judgment, Seller shall proceed diligently with the performance hereof according to ATC's direction.

22. COMPLIANCE WITH LAWS. Seller agrees to comply with all applicable local, state and federal laws and executive orders and regulations issued pursuant thereto and agrees to indemnify ATC against any liability, loss, cost, damage or expense by reason of Seller's violation of this provision.

23. GOVERNING LAW. This Order shall be governed by the laws of the Commonwealth of Massachusetts.

24. SEVERABILITY. If any provision of this Order, or any part thereof, shall be invalid or unenforceable, such provision or part shall be deemed severed, and the remainder hereof shall be given full force and effect.

25. GOVERNMENT WORK. Seller agrees that any part of the articles or work hereby ordered which is intended for use on Government work shall, at all times, be subject to such changes, suspensions, terminations, and cancellation of the uncompleted portion as the Government requires. Seller shall not be entitled to any additional compensation for complying with such acts by the Government unless compensation is paid by the Government to the prime contractor for Seller's additional costs, and only to the extent compensation is so paid. Seller agrees to comply with all applicable statutes and valid governmental rules, regulations, requirements, provisions and conditions required by law to be included in this order, which are expressly incorporated herein.

26. MISCELLANEOUS PROVISIONS. A Seller shall comply with the Fair Labor Standards Act, particularly sections 6, 7 and 12 thereof, and all other applicable Federal, state and local laws, regulations and orders and shall, upon request, furnish to Buyer a certificate to such effect. The Equal Opportunity clause in Title 41, Part 60-1.4 of the Code of Federal Regulations (Paragraphs 1 through 7 of President's Executive Order 11246), the Employment of the Handicapped clause in Title 20, Part 741.3 of the Code of Federal Regulations, listing of Employment Openings for Veterans clause in Title 41, Part 50-250.2, of the code of Federal Regulations and Disabled Veterans and Veterans of the Vietnam Era Clause in Title 41, Part 60-250, of the Code of Federal Regulations are incorporated herein by reference if and to the extent applicable. When applicable, Seller shall not discriminate against any employee or applicant for employment because of physical or mental handicap; and shall establish an affirmative action program applicable thereto, all as set forth in Part 741, Subchapter C, Chapter VI, Title 20 of the Code of Federal Regulations.

27. ACCEPTANCE OF ORDER. By accepting this Order, Seller accepts all terms and conditions printed on both the face and reverse side hereof, and to all riders and attachments hereto issued by ATC, notwithstanding any proposal of the Seller for additional or different terms which shall not become part of this Order unless expressly agreed to in writing by ATC.