

## ACCOUNTS RECEIVABLE FACTORING AGREEMENT

This ACCOUNTS RECEIVABLE FACTORING AGREEMENT ("Agreement") is a contract between YOU and 21st Capital Corp ("21st"), a California Corporation, and applies to YOUR use of the 21st factoring service and any related products and services (collectively the "Service"). This Agreement affects YOUR rights and duties and YOU should read it carefully. We encourage YOU to print the Agreement or copy it to YOUR computer's hard drive for YOUR reference. In this Agreement, "YOU" or "YOUR" means any person or entity using the Service ("Users").

By clicking "I Agree" or by receiving advances for the sale, assignment and transfer of YOUR accounts receivable to 21st, YOU agree to the terms and conditions of this Agreement, the 21st Privacy Policy, and any documents incorporated by reference. YOU further agree that this Agreement forms a legally binding contract between YOU and 21st, and that this Agreement constitutes "a writing signed by YOU" under any applicable law or regulation.Any rights not expressly granted herein are reserved by 21st. This Agreement is subject to change by 21st without prior notice (unless prior notice is required by law), by posting the revised Agreement on the 21st website. Descriptions of material amendments to this Agreement will be posted in advance on the 21st website in the "Policy Updates" section that is displayed to YOU when YOU log into YOUR account. YOU may review the current Agreement prior to initiating a transaction at any time at our Factoring Agreement page.

    A. WHEREAS, YOU desire to finance certain of YOUR accounts receivable and 21st wishes to extend an accounts receivable financing facility to YOU for said purpose.

    Now, therefore, in consideration of the mutual promises contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.    21st shall purchase from YOU, and YOU shall sell, assign and transfer to 21st ("factor"), from time-to-time, certain of YOUR accounts and accounts receivable and all proceeds thereof ("accounts"), at a Twenty Percent (20%) DISCOUNT from face value, on a transaction-by-transaction basis, as defined hereafter, net of sales tax, discounts, contra accounts, or any other amounts which would reduce the monetary obligation(s) of YOUR customers ("account debtors") owing said account, to pay the full face value, thereof, including, without limitation, the full right and power for 21st to notify the account debtors that the amount(s) due or to become due have or has been assigned and that payment is to be made to 21st, regarding not only the accounts specifically factored by YOU but also any additional accounts within the coverage of 21st's blanket security interest, described hereafter, to verify the amount(s) and validity thereof, to collect, compromise, sue for, assign, or to enforce collection thereof in any manner, in the name of 21st, or in the name of any assignee of 21st.  The factoring of said accounts by YOU shall be at YOUR sole and absolute discretion.  Whenever YOU want to factor accounts, YOU shall create the YOUR invoices by using 21st's software, available on 21st's website, to enter the necessary data from which YOUR invoices shall be created. All of the invoices you create on any calendar shall be batched to comprise a single transaction and you shall create no more than one (1) such transaction per day, unless this requirement is specifically waived by 21st. At the completion of each online invoice creation session, you shall receive an email from 21st

notifying you to authenticate (as defined in Article 9 of the Uniform Commercial Code) 21st's standard form Assignment Schedule ("SCHEDULE") listing said invoices, by clicking an "I Agree" button thereon, which shall incorporate the terms, conditions and provisions of this agreement. Additionally, YOU shall fax to 21st all ancillary documentation required by 21st (the "backup documents") evidencing YOUR legal right to invoice said account debtors.

2.    Upon 21st's receipt of each SCHEDULE from YOU, the invoice data, and the backup documents required by 21st, referred to above, 21st shall select the invoices it wishes to purchase from those submitted by YOU listed on each SCHEDULE, at its sole and absolute discretion, and shall purchase said invoices as a single transaction. 21st shall print and mail the invoices or submit the invoices electronically to the account debtors for payment. The invoices shall bear 21st's Notice of Assignment, and 21st's mailing address shall be imprinting on the invoices in place and instead of YOUR address. Each transaction shall be accounted for between 21st and YOU independently from all other such transactions entered into between 21st and YOU, except as provided hereafter.

3.    21st shall determine which of 21st's Factoring Programs ("PLAN 1" or "PLAN 2," as defined hereafter) shall be applicable thereto, based upon the criteria set forth in the TRANSACTION TABLE, below. 21st shall purchase all right, title and interest in said accounts by paying an initial payment ("ADVANCE") to YOU equivalent to Eighty Percent (80%) of the total amount of the invoices selected by 21st and set forth in each SCHEDULE.  21st's determination as to which of said Factoring Fee Programs shall be applicable to each transaction entered into between 21st and YOU, hereafter, and its classification, thereof, as PLAN 1 or 2, shall be final, and YOUR failure to protest said classification within twenty-four (24) hours of its depositof any check or the receipt of any wire transfer from 21st in payment of any ADVANCE, therefor, shall constitute YOUR consent to and ratification of said determination and classification by 21st, and YOU hereby waive any right to further protest said classification and any requirement for other notice, thereof.

Transaction Table

| 21st's Minimum Requirements for each Transaction ||||| 
|---|---|---|---|---|
| Factoring FEE Program Name | Minimum Total Transaction Amount | Minimum Invoice Amounts | Minimum Account Debtor Dun & Bradstreet Ratings | Invoices to be Acknowledged in writing by Account Debtors |
| Plan 1 | $50,000 | $10,000 | 5A2 | All Invoices |
| Plan 2 | Less than | Less than $10,000 | Less than 5A2 | To be decided by 21st |

4.    YOU hereby make the following representations, warranties and covenants with respect to all of the invoices submitted by YOU to 21st for factoring and each transaction that shall be entered into between 21st and YOU hereafter:

    a. Prior to the sale, assignment and transfer of said account by YOU to 21st, YOU shall be the sole and absolute owner of said account(s), and shall have the full legal power to make said sales, assignments and transfers, and except for the security interest granted hereby, the collateral, described below, shall free from and shall be kept free from all liens, claims, security interests and encumbrances; that no UCC-1 Financing Statement regarding the collateral or any proceeds thereof is now or shall be on file in the future in favor of anyone other than 21st, but if such other UCC-1 Financing Statement is on file, it will be immediately terminated or subordinated.

Page 2

03/20/03

      b. Said account(s) shall be presently due and owing with terms not to exceed net 30 days, unless 21st consents to different terms, the amount(s) thereof shall not be in dispute, and the payment of said account(s) shall not be contingent upon the fulfillment of this, or any other contract(s), past or future.

      c. There shall not be any set-offs or counterclaims against said account(s), and said account(s) shall not have been previously assigned or encumbered by YOU in any manner whatsoever.

      d. Said account(s) shall be the property of and shall be collected by 21st, but if for any reason any amount(s) thereof should be paidto YOU by any of saidaccoun t debtor(s), YOU shall immediately deliver all such checks or other instruments in kind unendorsed to 21st for deposit by 21st.

5.   YOU shall promptly advise 21st, in writing, if YOUR record keeping or place of business is changed, or a new place is added.

6.   21st shall have the power of endorsement for any purpose on any and all checks, drafts, money orders, or any other instruments in 21st's possession and payable to YOU, and YOU hereby appoint 21st as YOUR agent for said purpose.

7.   The DISCOUNT shall be retained by 21st from the collection of all invoice payments set forth in each SCHEDULE. However, YOU shall be entitled to a REBATE, regarding each transaction, for prompt payment of the invoices by said account debtor(s), as set forth in the REBATE TABLE below, provided YOU have not breached or violated this agreement or any other agreement between 21st and YOU. The Collection Periods set forth in the REBATE TABLE correspond to the number of days from the date of each ADVANCE, regarding each transaction, through and including the TRANSACTION CLOSING DATE, defined as the date upon which 21st shall receive the CLOSING CHECK, defined as the check in payment of the invoice listed on the SCHEDULE which shall result in the aggregate moneys collected by 21st being equal to or greater than the CLOSING AMOUNT, defined as the sum of the ADVANCE plus the DISCOUNT less the REBATE, if applicable, plus three (3) business days to allow for check clearance.

REBATE TABLE

| Collection Period | 1 - 10 | 11 - 20 | 21 - 30 | 31 - 40 | 41 - 50 | 51 - 60 | 61 - 70 | 71 - 80 | 81 - 90 | Over 90 |
|---|---|---|---|---|---|---|---|---|---|---|
| Plan 1 Rebates | 19% | 18% | 17% | 15% | 13% | 11% | 9% | 6% | 3% | 0% |
| Plan 2 Rebates | 18% | 17% | 16% | 14% | 12% | 10% | 8% | 5% | 2% | 0% |

8.   YOU hereby grant a security interest to 21st in the following collateral to secure any indebtedness owing by YOU to 21st: (i) all now owned and hereafter acquired accounts, accounts receivable, contract rights, general intangibles, instruments, deposit accounts, notes, drafts, documents, and chattel paper; any and all insurance and/or surety bond proceeds, thereon, to which YOU may be entitled, now or in the future, including, but not limited to any and all mechanic's lien rights, claims, actions, and causes of action, relating thereto, belonging to YOU now or in the future and the right to file and prosecute lawsuits,

pertaining thereto, in YOUR or 21st's name or otherwise; (ii) all furniture, equipment and fixtures now or hereafter owned by YOU; (iii) all inventory, including raw material, work-in-process and finished goods, now or hereafter owned by YOU; (iv) all other personal property, tangible and intangible, now owned and hereafter acquired by YOU; and (v) all additions and accessions to, replacement and/or proceeds of any of the foregoing as security for the payment of any obligations owing by YOU to 21st, including, but not limited to, the payment of 21st's ADVANCES made by 21st to or on behalf of YOU and its FACTORING FEES, defined as the DISCOUNT minus the REBATE, if any, and any other charges of 21st owing by YOU. 21st shall cause a UCC-1 Financing Statement to be filed, perfecting 21st's security interest in said collateral, without YOUR signature in accordance with Revised Article 9 of the Uniform Commercial Code version (the "UCC") in effect in YOUR state, listing said collateral, which YOU nonetheless agree to manually execute, if required by law.

9. Any of the following shall constitute an event of default by YOU of this agreement: (i) any of YOUR obligations to 21st pursuant to any agreement with 21st are not paid or performed promptly when due; (ii) YOU breach any warranty or provision hereof, or of any other instrument or agreement executed by YOU and delivered to 21st in connection with this or any other transaction; (iii) YOU die, become insolvent, or cease to do business as a going concern; (iv) YOU shall have given 21st substantially false information regarding the accounts receivable described in said SCHEDULES; (v) a petition in bankruptcy or for arrangement or reorganization be filed by or against YOU or YOU admit YOUR inability to pay YOUR debts as they mature; (vi) YOUR property is attached or a receiver is appointed for YOU; (vii) whenever 21st, in good faith, believes the prospect for payment or performance, as described above, is impaired or the collateral is insecure; (ix) any guarantor, surety or endorser for YOU defaults in any obligation or liability to 21st or any guarantee obtained in connection with this transaction is terminated or breached.

10. Upon YOUR default and at any time thereafter, 21st shall have all of the rights and remedies of a secured party under the California Commercial Code and/or the version of the Uniform Commercial Code adopted by the state in which YOU reside and any other applicable laws. 21st may, in its sole discretion, waive a default, or cure a default at YOUR expense. Additionally, 21st shall have the right to apply any applicable REBATES, as defined hereafter, or any other cash, that would otherwise be payable to YOU, that may come into the possession and control of 21st to any transaction(s) to cure a default by YOU. If the applicable REBATES or any additional cash are inadequate therefor, 21st shall have the right to deduct said amount(s) from any other advance otherwise owing to YOU by 21st, to demand payment of any other accounts receivable owing to YOU, without the necessity of notice to YOU, by notifying the account debtor(s), thereof, to pay 21st directly therefor, whether or not said accounts shall have been purchased by 21st, and/or to demand payment therefor from YOU. Notwithstanding the foregoing, in the event that the total moneys collected by 21st within ninety (90) days of the date of the payment of the ADVANCE by 21st to YOU, regarding any transaction(s), results in a SHORTAGE, defined as the amount by which 21st fails to collect the CLOSING AMOUNT, 21st shall have the right, in its sole discretion, to demand payment of the SHORTAGE from YOU, to offset said SHORTAGE against any sums otherwise owing by 21st to YOU, and/or to proceed against YOU for any remaining SHORTAGE, or against any account debtor(s) for collection of any unpaid invoice(s) or amount due, whether or not purchased by 21st. Furthermore, YOU agree to pay interest to 21st on any SHORTAGE at the daily rate of .25 percent, which shall accrue commencing ninety-one (91) days from the date of the ADVANCE paid by 21st to

YOU and shall continue to accrue thereafter until said SHORTAGE and accrued interest is paid in full.

11. If it becomes necessary for 21st to bring an action against YOU to enforce any of the terms or conditions of this agreement, or against any account debtor(s) to collect any unpaid invoice(s), all of 21st's attorneys' fees and /or collection costs and court costs, and all other expenses related thereto, which are defined as costs of suit, shall be borne by YOU.

12. YOU agree that 21st may, in its sole discretion, settle, compromise, or otherwise accept payment of less than the full amount of any invoice(s) sold, assigned and transferred by YOU to 21st, including, but not limited any fees charged by third parties employed by 21st to collect said accounts, if in its judgment such action is necessary to effect collection.

13. 21st may correct patent errors herein or in any SCHEDULE executed by YOU and fill in blanks. Any provision hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. This agreement shall be performed at Malibu, California. California law shall govern, construe and enforce all of the rights and duties of the parties arising from or related in any way to the subject matter of this agreement. YOU hereby consent to the jurisdiction of all courts in the County of Los Angeles, State of California. YOU waive the right to trial by jury in any legal action between 21st and YOU. YOU acknowledge receipt of a true copy and waive acceptance hereof. If YOU are a corporation, this agreement is executed pursuant to the authority of YOUR Board of Directors. 21st and YOU as used in this agreement, include the heirs, executors or administrators, successors or assigns of those parties. YOUR obligations and those of any guarantors of this agreement shall be joint and several. 21st may inspect and audit YOUR and guarantors' books and records during normal business hours, the actual cost of which shall be reimbursed by YOU to 21st. All accountings remitted by 21st to YOU shall be at 21st's discretion and shall be deemed to be correct unless written objection thereto is received by 21st within forty-eight (48) hours of YOUR receipt, thereof. YOU waive notice of acceptance hereof or of any transaction with 21st; presentment, protest or demand of any instrument and notice thereof; and forbearance or extension and any other notices and demands to which YOU may be entitled. YOU agree to reimburse 21st for any of its out-of-pocket costs and expenses, including, but not limited to, the cost for wire transfers of funds, delivery expenses, and postage. This agreement contains the entire agreement between the parties with respect to the contemplated transactions, and it may not be modified or any of its terms waived, except by an instrument in writing signed by the party or parties to be charged, and no collateral representations, whether oral or written, shall survive the execution of this agreement. Upon receipt of written notice and demand from 21st, YOU shall execute any further documents and take any further action which may be necessary or appropriate to carry out the purposes and intent of this agreement, or 21st shall have the to power to execute said documents and take such action in YOUR name or in the name of 21st. This agreement shall remain in full force and effect so long as YOU are indebted to 21st, pursuant to the terms of this or any other agreement between 21st and YOU, in any amount whatsoever. 21st shall, for its part, authenticate this agreement by sending YOU an email acceptance.

# MANUAL SIGNATURE PAGE
# DO NOT PRINT AND SIGN BELOW
# UNLESS REQUESTED TO DO SO
# AT A FUTURE DATE BY
# 21st Capital Corp

IN WITNESS, WHEREOF, the parties have executed this agreement on 12/3/2003 at Malibu, California.

**(21st) 21st CAPITAL CORP.**                     JLB Construction Inc.

By_____            _____
                                                        (Signature)

Its President
                                                        _____
                                                        (Print Name)

                                                        _____
                                                        (Title/Position)

Invoice Factoring: 80% Advance -- Real Time Nationwide Funding       https://66.215.111.102/clientsignup/signdocs/SignDocuments.asp?Pr...

**21st Capital Corp**
The marriage of factoring and technology

# DOCUMENT AUTHORIZATION



**JLB Construction Inc.**
**Jason Bentley (CEO or President)**

-- Instructions --

Please click each of the links below (the names of the documents) to view the documents in Adobe Acrobat Reader.

If the documents are missing data, you may have the wrong version of the Reader installed. Uninstall the current Reader and download and install the new version by clicking the Adobe icon above to navigate to the Adobe website. Be sure to select the correct version for your Platform (Operating System). To determine your Operating System for Windows 95/98/ME/2000, right click on My Computer on your Desktop and then left click Properties. For Windows XP, click the Start Button, right click My Computer and left click Properties. When the Download dialog box appears, choose "Open" rather than "Save" and click the appropriate buttons to accept all the default values.

After reading the documents, click the "I Agree" or "I Disagree" button located next to each document link. Clicking the "I Agree" button will constitute you electronic signature to each document and will have the same legal force and effect as if the document was a paper document and you signed it with a pen.

| DOCUMENT NAME | ACTION | | DECISION | DECISION DATE |
|---|---|---|---|---|
| Agreement | I Agree | I Disagree | Signed | 12/3/2003 |
| Guaranty | I Agree | I Disagree | Signed | 12/3/2003 |