UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12317 WGY

| | |
|---|---|
| AMERICAN TOWER CORPORATION,<br>　　　　　　　Plaintiff,<br><br>v.<br><br>J.L.B. CONSTRUCTION, INC., 21ST CAPITAL CORPORATION, PRIME COMMUNICATIONS, LLC, AMF ELECTRICAL CONTRACTORS, INC., HEINZ CORPORATION, DANIEL WENESS CONSTRUCTION, WESTERN STATES TOWER, LLC, WEST CENTRAL CONSULTING SERVICES, INC., STEWART ELECTRIC, INC., GLOBAL TOWER SERVICE, ADVANCED LIGHTNING TECHNOLOGY, INC. and GULF COAST STEEPLEJACK,<br>　　　　　　　Defendants. | |

**PLAINTIFF'S MOTION TO MODIFY PRELIMINARY INJUNCTION**

---

NOW COMES the Plaintiff American Tower Corporation ("American Tower") and pursuant to Fed.R.Civ.P. Rule 65 and 28 U.S.C. §2361, hereby moves, on an emergency basis, for the entry of an order that enjoins J.L.B. Construction, Inc, ("JLB" or "Defendant JLB"), and any and all subcontractors of JLB (the "Subcontractors" or "Subcontractor Defendants") (collectively, the "Defendants"), and all persons acting in concert with the Defendant JLB, from, among other things, filing any mechanics' liens or other similar instrument against any properties related to the funds at issue in this action or which relate

to claims of alleged non-payment for work performed at twenty-two (22) work sites (the "Sites") in accordance with a Master Contractor Agreement (the "Agreement"), dated January 1, 2003, until an evidentiary hearing on the merits is scheduled and held by this Court.

Specifically, the Plaintiff moves, in accordance with the Agreement, for the entry of an order enjoining the Defendant JLB, and any others acting in concert with JLB, from filing any mechanics' liens, materialmen's liens, or any other liens on any of the Sites referred to herein, or any additional sites as yet unnamed, which are subject to the Agreement.  Further, the Plaintiff moves for the entry of an order precluding any of the Subcontractor Defendants from filing any mechanics' liens or other similar instruments pursuant to the Agreement between JLB and the Plaintiff.

In support hereof, the Plaintiff states that on or about November 16, 2004, pursuant to 28 U.S.C. §2361, the Court (Young, J.) issued a preliminary injunction enjoining all of the Defendants, including JLB, from filing suit in any other jurisdiction.  The Plaintiff hereby respectfully requests that this Honorable Court modify the preliminary injunction to prevent any of the Defendants from filing any liens on any of the Sites named in the complaint or subject to the Agreement, due to the extreme prejudice this would cause the Plaintiff and its customers, especially since any claims by JLB for remuneration are properly the subject of this pending action.

## PROCEDURAL HISTORY

On or about November 1, 2004, the Plaintiff filed a Complaint in the United States District Court, District of Massachusetts, for Breach of Contract, Fraud, Indemnification, Contribution, Declaratory Relief, and Interpleader. On or about November 16, 2004, the Court (Young, J.) allowed the Plaintiff's Motion to Deposit Funds with the Registry of the Court and enjoined the Defendants from filing suit in any other jurisdiction in accordance with 28 U.S.C. §2361. Thereafter, default entered against the Subcontractors Gulf Coast Steeplejack; Global Tower Service; Western States Tower, LLC; Heinz Corporation; Daniel Weness Construction; AMF Electrical Contractors, Inc.; and Advanced Lightning Technology, Ltd. on or about January 13, 2005. On February 23, 2005, the Plaintiff filed a notice of Default as to the Defendant JLB, since JLB has not filed an answer or other responsive pleading in the matter. At this time, the Court has not yet entered default as to JLB.

## FACTUAL BACKGROUND

On or about January 1, 2003, the Plaintiff American Tower ("American Tower"), on behalf of ATC Tower Services, Inc. ("ACS"), and the Defendant JLB entered into a Master Contractor Agreement (the "Agreement") whereby JLB agreed to provide general contracting services to ACS and American Tower at twenty-two (22) tower sites (the "Sites") located in a number of states across the United States. See Affidavit of Paul J. Bergendahl, II, dated March 31, 2005 ("Bergendahl Affidavit") ¶3, and Agreement attached thereto as *Exhibit A*.

Pursuant to Article 4.7.1 of the Agreement, JLB was given the authority to hire subcontractors in order to complete the work at each of the Sites in exchange for payment by ACS to JLB and by JLB to the subcontractors for all work completed, so long as permission of the Plaintiff was granted in writing with regard to the hiring of the subcontractor pursuant to Article 6.3 of the Agreement. See Bergendahl Affidavit, ¶4.

The Defendant JLB is responsible for all payments to the subcontractors for work performed at the sites. However, American Tower and ACS reserved the right, under Articles 4.7.2 and 4.7.3 of the Agreement, to make payments to a subcontractor directly in the event that JLB failed to pay any subcontractor as promised. See Bergendahl Affidavit, ¶5. Under the Agreement, "if [American Tower] has reason to believe that [JLB] is not timely paying its subcontractors, Contractor agrees that [American Tower] shall have the right to make any payment due hereunder to Contractor jointly to Contractor and to any person, subcontractor, supplier or other entity to whom Contractor is indebted for labor performed or materials furnished in the performance of the Work." See Bergendahl Affidavit, *Exhibit A*. Further, under Article 4.7.4 of the Agreement, JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites. See Bergendahl Affidavit, ¶6.

On information and belief, on or about December 12, 2003, Jason L. Bentley ("Mr. Bentley"), on behalf of JLB, entered into an on-line factoring agreement with Capital Factors, Inc. a/k/a 21st Capital Corporation ("21st Capital")

assigning a certain unascertained portion of JLB's accounts receivable due under the Agreement with ATC to 21st Capital.  See Bergendahl Affidavit, ¶7.  On or about July 13, 2004, 21st Capital began to demand payment from American Tower for work performed under the Agreement, and instructed American Tower not to forward any further payment to JLB.  See Bergendahl Affidavit, ¶8.  The Defendant JLB maintains that it never entered into any such factoring agreement. See Bergendahl Affidavit, ¶9.

Thereafter, ACS was forced to hire additional subcontractors to complete certain projects at some of the Sites.  See Bergendahl Affidavit, ¶10.  The additional monies paid to subcontractors for the completion of the work was above and beyond the contract price determined and agreed upon by ACS and JLB.  See Bergendahl Affidavit, ¶11.  Additionally, on or about August 16, 2004, West Central Consulting Services, Inc. ("WCCS") filed a notice of intent to lien and a notice of labor and materialman's lien for the Cleveland, Mississippi site and the Sunflower, Mississippi site, despite the fact that JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement. See Bergendahl Affidavit, ¶12.

Specifically, the Agreement executed by JLB states that:  "[c]ontractor shall bind all subcontractors to the terms and conditions of this Agreement and the relevant Contract Documents...".  See Bergendahl Affidavit, *Exhibit A*, Article 4.7.1.  Under Article 4.7.4, the Agreement also states that:

> [t]o the extent permitted under the laws of the state in which the Work is located, **Contractor hereby agrees to waive and does hereby waive any and all mechanics' liens and right to lien in connection with the Work, agrees not to file any such mechanics' liens and agrees to look solely to ATC for payment for services hereunder and not to the Work site.** Contractor hereby agrees to include similar waiver provisions in each and every Subcontract by which each Subcontractor, to the extent permitted under the laws of the state in which the Work is located, waives any and all mechanics' liens and right to lien in connection with the Work. (Emph. added).

On or about March 16, 2005, JLB, through its President Mr. Bentley, contacted American Tower and informed it that JLB intends to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement. See Bergendahl Affidavit, ¶14. On or about March 23, 2005, American Tower was also contacted by one of the operators of a number of the Sites who informed American Tower that he had received notice from Mr. Bentley that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement. See Bergendahl Affidavit, ¶15.

## LEGAL ANALYSIS

Under federal and Massachusetts law, the Court may enter a preliminary injunction based on a "familiar four-part test". *Ocean Spray Cranberries, Inc. v. Pepsico, Inc.,* 160 F.3d 58, 60 (1st Cir. 1998). In order for the preliminary injunction to issue, the Plaintiff must satisfy the following four criteria: (1) demonstrate a reasonable likelihood of success on the merits of the claim; (2) show that [the plaintiff] will suffer irreparable injury if the injunction is not granted. (3) show that such injury outweighs any harm which granting injunctive relief

6

would cause the defendant(s); and (4) that the public interest will not be adversely affected by the granting of the injunction. *Id.* at 60-61; *Town of Westwood v. Adams Russell Company, Inc.*, 24 Mass. App. Ct. 914, 916, 507 N.E.2d 763 (1987); *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 405 N.E.2d 106 (1980); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *See also Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987).

When asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617, 405 N.E.2d 106, 112 (1980).

Although the decision to issue a preliminary injunction is within the sound discretion of the court, courts have not hesitated to issue such injunctions. *Shell Pipe Line Corp. v. West Texas Marketing Corp.*, 540 F. Supp. 1155 (S.D. Tx. 1982) (court has discretion to issue temporary injunctions); *Commerce and Industry Insurance Co.. v. Cableware, Ltd.*, F. Supp. 204 (S.D.N.Y. 1976) (power

to issue temporary injunctions is within broad discretion of the court); *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977) (restraining all parties from bringing any action relating to proceeds at issue in the interpleader).

Consistent with the purpose underlying the federal rules and statutes authorizing the interpleader actions, courts have recognized that injunctions are often essential to protect stakeholders from the burden of defending multiple actions. *O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (injunction was necessary to protect stakeholder from competing claims and threats of foreclosure and garnishment); *Commercial Union Insurance Co. of New York v. Adams*, 231 F. Supp. 860 (S.D. Ind. 1964) (ordering injunction to protect party from burden of defending multiple actions).

Pursuant to 28 U.S.C. §2361 "in any civil action of interpleader... a district court may ... enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further order of the court." The relief may be applied preliminarily, as stated above, or it may be awarded permanently. 28 U.S.C. §2361; *Melton v. White*, 848 F. Supp. 1513 (W.D. Ok. 1994). "The statute, by its terms, affords the court the power to enjoin other judicial proceedings in order to reduce the possibility of inconsistent determinations or the inequitable distribution of the fund." *Id*. at 1514 *citing United States v. Major Oil Corp.,* 583 F.2d 1152 (10th Cir. 1978).

A number of the Sites involved are owned, operated or managed by non-parties to the instant litigation. See Bergendahl Affidavit, ¶13. A lien on a

property, such as the Sites described herein, will cause immediate injury, loss and damage to American Tower, its customers, and to any and all owners, operators and managers of the particular site and could impair American Tower's relationship with its customers as it relates to the management and operation of thousands of sites across the country. See Bergendahl Affidavit, ¶16. Specifically, any such action by Defendants will put at risk significant customer relationships of American Tower that currently generate over One Hundred Million Dollars ($100,000,000.00) in annual revenue from two of American Tower's largest customers which are directly affected by Defendants' threatened actions. See Bergendahl Affidavit, ¶17. American Tower is concerned that if the Defendant JLB files these liens, as Mr. Bentley has threatened, the owners of the Sites, which may be subject to those liens, will be forced to fight invalid liens, since any monies owed to JLB are the subject of the escrow in this action. See Bergendahl Affidavit, ¶18. American Tower is also concerned that the business interests of American Tower, its customers, and the owners, operators, and managers of the named Sites, as well as other sites subject to the Agreement, will be irreparably harmed. Specifically, the reputations of American Tower and its customers may be irreparably harmed by the threatened actions. See Bergendahl Affidavit, ¶19.

  Additionally, the Plaintiff American Tower filed this interpleader action to ensure that that the Sites would not be encumbered with inappropriate liens and to further ensure that the proper parties were paid their respective just compensation without incurring unnecessary and additional expense defending

against non-meritorious and frivolous actions.  See Bergendahl Affidavit, ¶20.  The Defendant JLB waived all lien rights in accordance with the Agreement, as well as the lien rights of any subcontractors he hired to perform work at the sites.  As such, both JLB and the Subcontractor Defendants should be precluded from filing liens pursuant to the Agreement between JLB and American Tower, as well as to the interpleader statute.

The preliminary injunction ordered by the Court (Young, J.) on or about November 16, 2004, was designed to protect the Plaintiff from having to defend any other actions at the same time it is litigating the interpleader action in Massachusetts.  The Plaintiff is now asking for additional relief to prevent the Defendant JLB and any other Defendants from instituting any further legal proceedings, including filing liens, relating to the Sites, the subcontractors and the funds at issue, as well as any monies allegedly owed under the Agreement.  The Plaintiff is at risk of immediate and irreparable harm if the Preliminary Injunction is not issued.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter an order that:

A.  Restrains the Defendant JLB actions from filing any mechanics', materialmen's or other liens against the Plaintiff which relate to the funds at issue in this interpleader action or which relate to claims for alleged non-payment for work performed at the Sites in accordance with the Agreement;

B.  Restrains the Subcontractor Defendants from filing any mechanics', materialmen's or other liens against the Plaintiff which relate to the funds at issue

in this interpleader action or which relate to claims for alleged non-payment for work performed at the Sites in accordance with the Agreement between JLB and the Plaintiff; and

      C.    Grants such other and further relief as the Court deems necessary and proper.

                                      Respectfully submitted,
                                      AMERICAN TOWER CORPORATION,
                                      By its attorneys,

                                      /s/ Gregory J. Aceto
                                      Gregory J. Aceto, Esq.
                                      (BBO No. 558556)
                                      Erin J. Brennan, Esq.
                                      (BBO No. 660097)
                                      JOHNSON & ACETO, P.C.
                                      67 Batterymarch Street
                                      Boston, MA  02110
                                      (617) 728-0888

Dated:   April 1, 2005