UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12317WGY

| |
|---|
| AMERICAN TOWER CORPORATION, Plaintiff, <br><br> v. <br><br> J.L.B. CONSTRUCTION, INC., 21ST CAPITAL CORPORATION, PRIME COMMUNICATIONS, LLC, AMF ELECTRICAL CONTRACTORS, INC., HEINZ CORPORATION, DANIEL WENESS CONSTRUCTION, WESTERN STATES TOWER, LLC, WEST CENTRAL CONSULTING SERVICES, INC., STEWART ELECTRIC, INC., GLOBAL TOWER SERVICE, ADVANCED LIGHTNING TECHNOLOGY, INC. and GULF COAST STEEPLEJACK, Defendants. |

### AFFIDAVIT OF PAUL J. BERGENDAHL, II IN SUPPORT OF PLAINTIFF'S MOTION TO MODIFY PRELIMINARY INJUNCTION

I, Paul J. Bergendahl, II, under oath, hereby depose and state as follows:

1. I make this affidavit based upon my own personal knowledge and belief and offer it in support of a motion to modify the preliminary injunction issued in the above matter.

2. I am the senior paralegal in the Legal Department of American Tower Corporation, located at 116 Huntington Avenue, Boston, MA 02116.

3. On or about January 1, 2003, the Plaintiff American Tower Corporation ("American Tower"), on behalf of ATC Tower Services, Inc. ("ACS"), and the Defendant JLB entered into a Master Contractor Agreement (the "Agreement") whereby J.L.B. Construction, Inc. ("J.L.B.") agreed to provide general contracting services to ACS and American Tower at twenty-two (22) tower sites (the "Sites") located in a number of states across the United States. A true and correct copy of the Agreement is attached hereto as *Exhibit A*.

4. Pursuant to Article 4.7.1 of the Agreement, JLB was given the authority to hire subcontractors in order to complete the work at each of the Sites in exchange for payment by ACS to JLB and by JLB to the subcontractors for all work completed, so long as permission of the Plaintiff was granted in writing with regard to the hiring of the subcontractor pursuant to Article 6.3 of the Agreement.

5. The Defendant JLB is responsible for all payments to the subcontractors for work performed at the sites, however, American Tower and ACS reserved the right, under Articles 4.7.2 and 4.7.3 of the Agreement, to make payments to a subcontractor directly in the event that JLB failed to pay any subcontractor as promised.

6. Further, under Article 4.7.4 of the Agreement, JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites.

7. Thereafter, I was informed that Jason L. Bentley ("Mr. Bentley"), on behalf of JLB, entered into an on-line factoring agreement with Capital Factors, Inc. a/k/a 21st Capital Corporation ("21st Capital") assigning a certain unascertained portion of JLB's accounts receivable due under the Agreement with American Tower to 21st Capital.

8. On or about July 13, 2004, 21st Capital began to demand payment from American Tower for work performed under the Agreement, and instructed American Tower not to forward any further payments to JLB.

9. The Defendant JLB denied that it entered into any such factoring agreement.

10. Thereafter, ACS was forced to hire additional subcontractors to complete certain projects at some of the Sites.

11. The additional monies paid to subcontractors for the completion of the work was above and beyond the contract price determined and agreed upon by ACS and JLB.

12. Additionally, on or about August 16, 2004, West Central Consulting Services, Inc. ("WCCS"), a JLB subcontractor, filed a notice of intent to lien and a notice of labor and materialman's lien for the Cleveland, Mississippi site and for the Sunflower, Mississippi site, despite the fact that JLB waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement.

13. A number of the Sites involved are owned, operated or managed by non-parties to the instant litigation.

14. On or about March 16, 2005, JLB, through its President Mr. Bentley, contacted me and informed me that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement.

15. On or about March 23, 2005, I was also contacted by one of the operators of a number of the Sites who advised me that he had received notice from Mr. Bentley that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement.

16. A lien on a property, such as the Sites described herein, will cause immediate injury, loss and damage to American Tower, its customers, and to any and all owners, operators and managers of the particular site and could impair American Tower's relationship with its customers as it relates to the management and operation of thousands of sites across the country.

17. Specifically, any such action by Defendants will put at risk significant customer relationships of American Tower that currently generate over One Hundred Million Dollars ($100,000,000.00) in annual revenue from two of American Tower's largest customers which are directly affected by Defendants' threatened actions.

18. American Tower is concerned that if the Defendant JLB files these liens, as Mr. Bentley has threatened, the owners of the Sites which may be subject to those liens will be forced to fight invalid liens, since any monies owed to JLB are the subject of the escrow in this action.

19. American Tower is also concerned that the business interests of American Tower, its customers, and the owners, operators, and managers of the named Sites, as well as other sites subject to the Agreement, will be irreparably harmed. Specifically, the reputations of American Tower and its customers may be irreparably harmed by the threatened actions.

20. American Tower filed this interpleader action to ensure that the Sites would not be encumbered with inappropriate liens and to further ensure that the proper parties were paid their respective just compensation without incurring unnecessary and additional expense defending against non-meritorious and frivolous actions.

Signed under the pains and penalties of perjury this 1st day of April, 2005.

_____
Paul J. Bergendahl, II