UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN TOWER COPORATION,<br><br>　　　Plaintiff,<br><br>v.<br><br>J.L.B. CONSTRUCTION, INC. et al.<br><br>　　　Defendants. | Case No. 04-12317WGY |

**DEFENDANT PRIME COMMUNICATIONS, LLC'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO MODIFY PRELIMINARY INJUNCTION**

Defendant Prime Communications, LLC ("Prime") hereby opposes Plaintiff's Motion To Modify Preliminary Injunction, stating as follows:

**FACTS**

Prime is a small contractor based in Kansas City, Missouri that provides labor and materials for the construction and maintenance of cell phone towers throughout the United States. Plaintiff American Tower Corporation ("ATC") alleges in its complaint that on or about January 1, 2003, it entered into a contract with Defendant J.L.B. Construction ("JLB") to provide general contracting services at twenty-two (22) tower sites throughout the United States. ATC Complaint, ¶ 15. ATC states in its complaint that it does not own the tower sites but, instead, provides construction and development services for the third-party owners of such tower sites. ATC Complaint ¶ 14. As ATC admits in its complaint, Prime was hired by JLB to perform certain work on the following tower sites and Prime is owed the following sums for such work:

**MONIES OWED TO PRIME PER ATC COMPLAINT**

| City/State | Site Name | Amount | Complaint |
|---|---|---|---|
| Irvington, AL | Bayou LaBatre Site | $ 16,100 | ¶24 |
| Mobile, AL | Fowl River Site | $ 13,700.00 | ¶50 |
| | **AL Total:** | **29,800.00** | |
| | | | |
| Sturgis, MS | Hwy 25N Site | $ 8,100.00 | ¶59 |
| Cleveland, MS | Cleveland Site | $ 3,576.50 | ¶40 |
| Columbus, MS | Columbus Site | $ 4,265.50 | ¶44 |
| Sunflower, MS | Sunflower Site | $ 6,219.50 | ¶98 |
| | **MS Total:** | **$ 22,162.00** | |
| | | | |
| Rock Hill, MO | China Wok Site | $ 450.00 | ¶32 |
| Pine Lawn, MO | Graytak Site | $ 6,850.00 | ¶55 |
| Wellston, MO | MLK Site | $ 7,150.00 | ¶82 |
| St. Louis, MO | Roofers Supply | $ 9,350.00 | ¶94 |
| | **MO Total:** | **$ 23,800.00** | |

## Overall Total Owed To Prime:     $ 75,761.50[1]

---

[1] As set forth in Prime's counterclaim, Prime is claiming sums in excess of the amounts set forth in ATC's complaint due to ATC's negligence and mismanagement of the projects, which caused Prime to incur additional costs.

**ARGUMENT**

I.  <u>Prime Is Entitled To Exercise Its Lien Rights In Those States Where It Performed Work In Connection With The Improvement Of Real Property And For Which It Has Not Been Paid</u>.

As Plaintiff ATC has admitted, Prime performed work in connection with the improvements to real property at each of the above-sites. As a result, Prime is entitled to exercise its lien rights in each of the three states in which it provided labor and materials but for which it has not been paid. *See* Ala.Code 1975 δ 35-11-210; Mo.Rev.St. δ 429.010; Miss.Code Ann. δ 85-7-181.

II.  <u>The Present Lawsuit Should Not Negate Or Limit Prime's Lien Rights</u>.

ATC provides no basis to justify this Court's entry of a preliminary injunction precluding Prime from exercising its lien rights for work that Prime has performed on the tower sites referenced above, but for which Prime has not been paid. The mere fact that ATC has initiated this interpleader action in order to determine how the remaining proceeds under its contract between ATC and JLB are to be distributed does not and should not limit Prime's right to exercise its valid lien rights afforded under the lien statutes of the three states referenced above (Missouri, Alabama and Mississippi). Prime is not a party to the agreement between ATC and JLB. Prime was a subcontractor to JLB.

    A.  <u>Under The Lien Law Of Missouri And Alabama, Prime Is Entitled To Assert A Lien Against The Subject Properties Regardless of What Monies May Or May Not Be Owed Under The Contract Between ATC and JLB</u>.

Under the lien law of Missouri and Alabama, a subcontractor's exercise of his lien rights is not limited by the amount of the remaining proceeds due the prime contractor under the contract between the owner and the prime contractor. *See* Ala.Code 1975 δ 35-11-210;

3

Mo.Rev.St. δ 429.010.  As the Missouri Supreme Court has stated: "The fact that the principal contractor has been paid in full constitutes no defense against the claim of the subcontractor for a lien otherwise conforming to the law on this subject." *Ittner v. Hughes* 34 S.W. 1110, 1113 (MO 1896), *citing*, *Henry & Coatsworth Co. v. Evans,* 10 S. W. 868 (MO 1889).  Thus, the onus is placed on the owner of real property (or his agent) to know who is working on his property and to take steps to ensure that any subcontractors are being paid by the general contractor.  Failing that, the owner runs the risk that liens may be filed on his property even though he has paid the general contractor whatever sums may be owed under the contract between the owner and the general contractor.  By hiring contractors such as JLB to provide general contractor services throughout the country, ATC subjected itself and its third-party customers who own the tower sites to the lien laws of the various states in which the work was performed.  The contract between ATC and JLB specifically contemplated that JLB would be hiring subcontractors.  ATC Complaint, ¶ 19.  It was up to ATC and/or the third-party owners to keep track of who JLB was hiring to perform the work and to ensure that those subcontractors were being paid.  ATC could have further protected itself and its owners by requiring that JLB post payment and performance bonds in order to avoid the risk of liens.  ATC apparently chose not to take these steps to protect itself and its customers.

Having failed to protect itself and its customers from legitimate liens, ATC now comes into this Court and attempts to negate the rights of Prime and the other defendants to exercise their legitimate lien rights.  Such a result would be patently unfair to Prime, particularly since ATC acknowledges in its complaint that the interpleader amount in this matter is not sufficient to satisfy the claims of all of the defendants.  The present interpleader cause of action initiated by ATC merely will decide how the remaining balance under the contract between ATC and JLB is

4

to be disbursed. But the disbursement of the remaining balance does not limit what Prime is entitled to recover under the lien statutes of Missouri and Alabama where it performed work for which it has not been paid. Under those statutes, Prime is entitled to be paid for its services without reference to or limitation by the amount of the remaining proceeds to be paid out under the contract between JLB and ATC. As a result, this Court has no basis to prohibit Prime from asserting its separate lien rights.[2]

      B.    <u>Prime Is Also Entitled To Assert A Lien On The Contract Balances Due On The Mississippi Sites</u>.

Under the lien law of Mississippi, Prime (as a subcontractor to JLB) is entitled to assert a lien on the unpaid contract balances due under the contract between ATC and JLB for the Mississippi sites. *See* Miss.Code Ann. δ 85-7-181. According to ATC's complaint, ATC has paid out only $7,000 of the overall contract price of $ 70,955 on the four Mississippi sites on which Prime performed work but was not paid for same. *See* ATC Complaint ¶¶ 39-42, 43-45, 56-60, 97-99, 101-102. As such, Prime must be allowed to assert its legitimate lien rights to the unpaid contract balance of $63,955 that corresponds to the four tower sites in Mississippi where Prime performed work. Such a lien right is independent of any claim Prime is asserting in this action to the overall interpleader amount, which apparently reflects deductions for additional work that was performed by third-parties on other sites that was paid for by ATC outside of its contract with JLB. Prime's lien in this instance preserves its claim on the $ 63,955 in unpaid Mississippi contract funds – regardless of any deductions that ATC may be asserting for work performed by others on other sites. Again, there is no basis for this Court to preclude Prime from

---

[2] Obviously, to the extent Prime is awarded a recovery in this action, its independent lien claims will be reduced in the same amount. Prime is not seeking a double recovery; rather, Prime is merely seeking to preserve its alternative and independent avenue of recovery afforded to it under the lien laws of the relevant states.

5

asserting its separate, legitimate lien rights to these specific unpaid contract balances on the Mississippi tower sites.

III.     ATC Has Not Met Its Burden Of Proving It Is Entitled To The Relief Requested.

As acknowledged in ATC's motion, ATC must meet a heavy burden in order for this Court to grant a preliminary injunction prohibiting Prime and the other defendants from asserting their legitimate lien rights. ATC has failed to meet that burden. First, a decision on the merits of ATC's interpleader cause of action, which will only decide how the interpleader amount will be disbursed, does not negate or limit Prime's ability to assert its independent and legitimate lien rights in Missouri and Alabama. Prime's lien rights are independent of whatever sums may be paid out under the contract between ATC and JLB. Thus, there is no possible way for ATC to be successful on the merits in its attempt in this interpleader action to preclude Prime from asserting its lien rights in those states. Simply put, the determination by this Court as to how to disburse the interpleader amount is completely independent of Prime's right to assert its liens regardless of what money is remaining to be paid under the contract between ATC and JLB. Second, any harm that ATC may suffer would be the result of its own failure to protect its interests and the interests of its customers (the owners of the sites) by better monitoring JLB's actions and the subcontractors that JLB was hiring to perform the work on the various sites throughout the country. By providing general development services to tower sites in numerous states and then failing to pay for the work done by those subcontractors who were hired to perform the work, ATC has subjected itself and its customers to the lien laws of those states. That is in no way the fault of Prime or the other subcontractors. Even if the allegations in ATC's complaint are believed, any harm resulting to ATC is from its own mismanagement and lack of supervision of JLB. Third, the injury to Prime if the Court grants the requested relief far outweighs any injury

6

to ATC. Prime will have its legitimate lien rights negated simply to help ATC cover its tracks with its own customers (by avoiding legitimate liens), which tracks were created when ATC failed to properly manage the work being done on the various sites and then failed to pay for the work. As noted above, Prime is a very small contractor and the loss of over $75,000 in cash flow for work that nobody disputes was done is devastating to Prime. Prime should be afforded every opportunity recover those sums through its independent lien rights afforded to it in the three states in which it performed the work. Lastly, the public interest will be served in allowing Prime and the other subcontractors to assert their legitimate lien rights, which were enacted for just such a purpose, to provide an avenue of recovery for subcontractors who have not been paid for work performed.

   WHEREFORE, this Court should deny ATC's motion to modify the preliminary injunction in this matter and allow Prime to fully exercise its lien rights in the states in which Prime performed work but has not been paid for same, and grant Prime such other and further relief as the Court deems just and proper.

Dated: April 15, 2005                    Respectfully submitted,

                                         Prime Communications, Inc.

                                         By its attorney:

                                         Andrew C. Gately
                                         BBO# 645606
                                         Gately & Goldman, LLP
                                         34 Channing Street
                                         Newton, MA  02458
                                         Tel. (617) 969-8555
                                         Fax (617) 969-5552

**CERTIFICATE OF SERVICE**

      I certify under penalties of perjury that the above and foregoing was filed electronically on April 15, 2005 via the Court's CM/ECF system, thereby generating a Notice of Electronic Filing (NEF) and satisfying the requirements of service under Fed.R.Civ.P. 5(b)(2)(D).

_/s/ signature_

Attorney for Prime Communications, LLC