UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 04-12317 WGY

| | |
|---|---|
| AMERICAN TOWER CORPORATION,<br>Plaintiff,<br><br>v.<br><br>J.L.B. CONSTRUCTION, INC., 21ST CAPITAL CORPORATION, PRIME COMMUNICATIONS, LLC, AMF ELECTRICAL CONTRACTORS, INC., HEINZ CORPORATION, DANIEL WENESS CONSTRUCTION, WESTERN STATES TOWER, LLC, WEST CENTRAL CONSULTING SERVICES, INC., STEWART ELECTRIC, INC., GLOBAL TOWER SERVICE, ADVANCED LIGHTNING TECHNOLOGY, INC. and GULF COAST STEEPLEJACK,<br>Defendants. | |

**PLAINTIFF AMERICAN TOWER'S MOTION TO STRIKE DEFENDANT
J.L.B. CONSTRUCTION'S MOTION TO REMOVE ENTRY OF DEFAULT OR,
IN THE ALTERNATIVE, PLAINTIFF'S OPPOSITION THERETO**

**NOW COMES** the Plaintiff American Tower Corporation ("American Tower") and hereby moves to strike the Defendant J.L.B. Construction, Inc.'s ("JLB" or "Defendant JLB") Motion to Remove Entry of Default, or alternatively, hereby opposes the Defendant JLB's Motion to Remove Entry of Default and further requests that this Honorable Court enter an order that:

(i) denies JLB's Motion to Remove Entry of Default; and

(ii) enjoins JLB, and all persons acting in concert with the Defendant JLB, from, among other things, filing any mechanics' liens or other similar instrument against any properties related to the funds at issue in this action or which relate to claims of alleged non-payment for work performed at twenty-two (22) work sites (the "Sites") in accordance with a Master Contractor Agreement (the "Agreement"), dated January 1, 2003, until an evidentiary hearing on the merits is scheduled and held by this Court.

**A.     Plaintiff's Motion to Strike**

The Plaintiff hereby moves to strike the Defendant JLB's Motion to Remove Entry of Default, because the Motion refers to an Affidavit of Jason L. Bentley as *Exhibit A* which was not attached to the e-filed document.  Further, the Certificate of Service indicates that the entire pleading would be sent via U.S. Mail as well, but Plaintiff's Counsel has not received a copy via U.S. Mail.  To date, Plaintiff's counsel has not been served with a copy of the Affidavit of Jason L. Bentley, electronically or otherwise.  Under Fed.R.Civ.P. Rule 6(d), when a motion is supported by affidavit, the affidavit must be served with the motion. Additionally, the Defendant JLB has not included an Answer to be filed in the event the Motion is allowed.  As such, the Plaintiff hereby moves to strike the Defendant JLB's Motion for failure to properly file and serve the Affidavit in support of the Motion and a copy of the Answer upon the Court and the parties.

**B.     Plaintiff's Opposition and Motion for Injunctive Relief**

The Plaintiff opposes the Defendant JLB's late attempt to remove default and motion to file an answer, which has been filed six (6) months after the

Defendant JLB was served with the complaint, two (2) months after default was requested, and one (1) month after default entered.  Plaintiff hereby moves that the motion be denied.  Alternatively, the Plaintiff moves, in accordance with the Agreement executed by American Tower and JLB, for the entry of an order enjoining the Defendant JLB, and any others acting in concert with JLB, from filing any mechanics' liens, materialmen's liens, or any other liens on any of the Sites referred to herein, or any additional sites as yet unnamed, which are subject to the Agreement.  In support hereof, the Plaintiff states as follows:

## FACTUAL BACKGROUND

**I.     Motion to Remove Default**

On or about November 1, 2004, the Plaintiff filed a Complaint in the United States District Court, District of Massachusetts, for Breach of Contract, Fraud, Indemnification, Contribution, Declaratory Relief, and Interpleader.  On or about November 14, 2004, JLB filed a "Response to Claim" and Motion to Change Venue.  On or about November 16, 2004, the Court (Young, J.) allowed the Plaintiff's Motion to Deposit Funds with the Registry of the Court and enjoined the Defendants from filing suit in any other jurisdiction in accordance with 28 U.S.C. §2361.  The Court (Young, J.) also struck the Defendant JLB's Motion to Change Venue.  According to the docket, all parties who were not able to e-file or who were unable to receive e-filings were to be served with documents via U.S. Mail.  The Court (Young, J.) served its Orders and mailings on all parties via e-mail and via U.S. Mail.  Counsel for the Plaintiff forwarded all of its filed documents and pleadings via the e-filing system and via U.S. Mail.

In or around December, 2004, the Defendants Prime, WCCS and Stewart filed Answers, Counterclaims against American Tower and Cross-Claims against JLB. Counsel for the Defendants Prime, WCCS and Stewart served all pleadings on the parties via the e-filing system and via U.S. Mail. On or about December 20, 2004, the Plaintiff filed a notice of Default for the Subcontractors Gulf Coast Steeplejack; Global Tower Service; Western States Tower, LLC; Heinz Corporation; Daniel Weness Construction; AMF Electrical Contractors, Inc.; and Advanced Lightning Technology, Ltd. and a Motion to Strike the Responsive Pleading of the Defendant JLB. On or about January 4, 2005, the Court (Young, J.) allowed the Plaintiff's Motion to Strike the Responsive Pleading of the Defendant JLB. On or about January 13, 2005, default entered against the Subcontractors Gulf Coast Steeplejack; Global Tower Service; Western States Tower, LLC; Heinz Corporation; Daniel Weness Construction; AMF Electrical Contractors, Inc.; and Advanced Lightning Technology, Ltd. On February 23, 2005, the Plaintiff filed a notice of Default as to the Defendant JLB, since JLB had not filed any answer or other responsive pleading in the matter. On or about April 6, 2005, the Court (Young, J.) entered default as to JLB. On or about May 5, 2005, the Defendant JLB, through counsel, filed a Motion to Remove Entry of Default.

The Defendant JLB states in its Motion that "JLB's failure to answer was inadvertent, unintentional and was the result of excusable neglect." The Defendant further states that "JLB never learned that its Answer had been stricken and that it had been defaulted until it was finally able to retain counsel in

connection with the Court-related mediation." Finally, the Defendant alleges that "JLB was not aware, until it recently retained the services of counsel, that default had been entered against it." Defendant's Counsel also argues that "the timing of this Motion appropriately coincides with JLB's retention of counsel in this matter."

Every pleading, order and notice filed with or issued by the Court were initially sent, via U.S. Mail, to all Defendants in the matter, pursuant to Fed.R.Civ.P. Rule 5(d) and Rule 77(d). Following the default of the first seven (7) defendants, counsel for the Plaintiff then served every pleading, document and letter on the Defendant JLB via U.S. Mail and on the Defendants WCCS, Stewart, Prime and 21st Capital, via the e-filing system. A separate Certificate of Service was filed by Plaintiff's Counsel with every filing.

Further, in or around March, 2005, Plaintiff's Counsel received a voice mail message from Attorney Jason Morgan claiming to have been retained by Jason L. Bentley. The voice mail acknowledged the pending mediation date of March 21, 2005 and indicated that he would be actively involved. Thereafter, Plaintiff's Counsel heard nothing further until Friday, May 6, 2005, when Jason Morgan entered an appearance in the matter and filed the Motion to Remove Entry of Default.

**II.   Motion to Enjoin JLB from Filing Liens**

As previously established, on or about January 1, 2003, the Plaintiff American Tower ("American Tower"), on behalf of ATC Tower Services, Inc. ("ACS"), and the Defendant JLB entered into a Master Contractor Agreement

5

(the "Agreement") whereby JLB agreed to provide general contracting services to ACS and American Tower at twenty-two (22) tower sites (the "Sites") located in a number of states across the United States.

On information and belief, on or about December 12, 2003, Jason L. Bentley ("Mr. Bentley"), on behalf of JLB, entered into an on-line factoring agreement with Capital Factors, Inc. a/k/a 21st Capital Corporation ("21st Capital") assigning or securing a certain unascertained portion of JLB's accounts receivable due under the Agreement with American Tower to 21st Capital. On or about July 13, 2004, 21st Capital began to demand payment from American Tower for work performed under the Agreement, and instructed American Tower not to forward any further payment to JLB. The Defendant JLB maintains that it never entered into any such factoring agreement. Such action constitutes a breach of the Agreement with American Tower.

Under the Agreement, JLB explicitly waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement. Specifically, the Agreement *executed by Jason L. Bentley on behalf of JLB* states that:

> [t]o the extent permitted under the laws of the state in which the Work is located, **Contractor hereby agrees to waive and does hereby waive any and all mechanics' liens and right to lien in connection with the Work, agrees not to file any such mechanics' liens and agrees to look solely to ATC for payment for services hereunder and not to the Work site.** Contractor hereby agrees to include similar waiver provisions in each and every Subcontract by which each Subcontractor, to the extent permitted under the laws of the

    state in which the Work is located, waives any and all mechanics' liens and right to lien in connection with the Work.  (Emph. added).

On or about March 16, 2005, JLB, through its President Mr. Bentley, contacted American Tower and informed it that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement.  On or about March 23, 2005, American Tower was also contacted by one of the operators of a number of the Sites who informed American Tower that he had received notice from Mr. Bentley that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement.

## LEGAL ANALYSIS

**I.**  **The Defendant JLB's Motion to Remove Entry of Default must be denied because the Defendant has not met the burden necessary for the Court to set aside a Default.**

Under Rule 55(c) of the Federal Rules of Civil Procedure, a party against whom a default has been entered must show "good cause" in order to have it set aside.  Rule 55(c) requires that the court look to Rule 60(b) when determining whether a default judgment should be set aside.  Based on the grounds for relief from a default judgment, which include "mistake, inadvertence, surprise, or excusable neglect", the majority of courts have generally acknowledged that "good cause", as it applies to a default as opposed to default judgment, is a broader and more liberal standard than the criteria required by Rule 60(b).  Federal Rules of Civil Procedure, Rule 60(b); *Eisler v. Stritzler*, 45 FRD 27 (DC Puerto Rico 1968).

Whether there is good cause for granting relief is a matter resting within the sound discretion of the trial court. *Id.* Such discretion is to be "exercised with due regard to the particular facts and circumstances surrounding each case." *Id.*; *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1,12 (1st Cir. 2003) [stating that the court must "necessarily decide each case on its own unique circumstances"]. The court will look to factors such as (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion [to set aside entry of default]. *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) *citing McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498 (1st Cir. 1996).

However, the court does not actually "set forth any precise formula" for the analysis. *KPS & Associates, Inc.,* 318 F.3d at 12. While the district court, in deciding whether to grant a motion for relief from default, should consider willfulness of default, prejudice to the nonmoving party, and whether the movant has a meritorious defense, these factors are not talismanic, and the court may consider others. *Id.* Finally, the burden of "demonstrating good cause for the removal of a default" rests with the movant. *Id.* at 14 *citing Bond Leather Co. v. Q.T. Shoe Mfg. Co.,* 764 F.2d 928, 938 (1st Cir. 1985).

      **a.**    **The Motion to Remove Entry of Default must be denied because the Defendant's failure to answer was intentional and willful.**

Though a court will consider many factors in determining whether the default was the result of excusable neglect, and the standard for consideration is both liberal and broadly construed, "good cause" is not a limitless standard. Courts will refuse to remove a default where the default was the result of gross neglect or an intentional lack of diligence, or where default resulted because of a willful act. *Bedard v. Consolidated Mut. Ins. Co.,* 313 F. Supp. 1020 (DC Puerto Rico 1970); *Carignan v. United States*, 48 FRD 323 (DC Mass 1969).

    The Defendant JLB filed a Response to Claim when he was first served with the Complaint. Thereafter, the Court (Young, J.) struck the pleading, because a corporation cannot appear save through counsel. Each e-notice that is sent by the Court in the above matter acknowledges that service will be made upon certain parties electronically and upon JLB via the U.S. Mail. The Defendant JLB alleges in its Motion that it "never learned that its Answer had been stricken and that it had been defaulted until it was finally able to retain counsel in connection with the Court-related mediation" and that "JLB was not aware, until it recently retained the services of counsel, that default had been entered against it." However, the parties and Court continually mailed the Defendant JLB copies of all pleadings, documents, orders and letters. Under Rule 77(d) of the Federal Rules of Civil Procedure, "immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry in the manner provided for in Rule 5(b) upon each party who is not in default for failure to

appear, and shall make a note in the docket of the service." Further, the Defendant JLB claims it did not have notice of any of these events, but JLB retained counsel to participate in a mediation, the order for which was sent via U.S. mail by the court to the same address throughout this proceeding.

Multiple copies of pleadings, orders and letters were forwarded to the Defendant JLB via U.S. mail and yet the Defendant JLB failed and refused to respond. As such, it is apparent that JLB was aware of the status of the matter at all times, but chose to ignore the duties imposed by the Federal Rules of Civil Procedure.

>   **b.    The Defendant JLB has not presented a meritorious defense, but has merely made a statement alleging same.**

One consideration upon which the court relies heavily is whether or not the defaulting party makes a showing indicating that it has a meritorious defense to the claim against it. *Carignan v. United States*, 48 FRD 323 (DC Mass 1969). Since the opening of a default would be pointless if it could not potentially affect the outcome of the suit, it has generally been recognized that relief should not be afforded under Rule 55(c) unless the defaulting party makes some showing indicating that it has a meritorious defense to the claim against him. *Id.* A "showing" sufficient for the purpose of this consideration is generally acknowledged by what has been deemed inadequate. As such, a mere conclusory statement that a meritorious defense exists is an inadequate showing. *Id.*

In the Defendant JLB's Motion to Remove Default, the Defendant alleges that "JLB has meritorious defenses to this action, and will be substantially

prejudiced if not allowed to defend itself in this action." The Defendant JLB offers no indication of what the meritorious defenses are, provides no support for why such alleged defenses are excluded, and fails to offer a draft Answer alleging same with its Motion. The allegation is a "mere conclusory statement" and is, therefore, inadequate as support for "good cause" why the default should be removed.

As such, based on the standard applied by the court and the Defendant's failure to sustain his burden in alleging good cause, the Motion to Remove Entry of Default should be denied.

    **c.    The filing of the Defendant JLB's motion is untimely, because the Motion was filed six (6) months after service, two (2) months after the request for default was filed and one (1) month after default entered.**

The Defendant JLB alleges in its Motion that the "timing of this Motion appropriately coincides with JLB's retention of counsel." However, the Motion fails to acknowledge the length of time that passed between the default and the Motion, and further, fails to acknowledge that counsel for the Defendant JLB contacted the Plaintiff's attorney before default entered.

The *Eisler* court held that a motion to set aside entry of default would be granted where defendant moved to set default aside one day after he learned of the default. 45 FRD at 27. In the instant matter, the Defendant JLB waited two (2) months before attempting to remedy the default and one (1) month before attempting to remove it, despite having received notice of same. Based on the foregoing, the Court should deny the Defendant's Motion to Remove Entry of Default.

**II.    The Court should allow the Plaintiff's Motion to enjoin JLB from filing liens, because the Plaintiff has met the burden of the four-part test.**

Under federal and Massachusetts law, the Court may enter a preliminary injunction based on a "familiar four-part test". *Ocean Spray Cranberries, Inc. v. Pepsico, Inc.,* 160 F.3d 58, 60 (1st Cir. 1998). In order for the preliminary injunction to issue, the Plaintiff must satisfy the following four criteria: (1) demonstrate a reasonable likelihood of success on the merits of the claim; (2) show that [the plaintiff] will suffer irreparable injury if the injunction is not granted. (3) show that such injury outweighs any harm which granting injunctive relief would cause the defendant(s); and (4) that the public interest will not be adversely affected by the granting of the injunction. *Id.* at 60-61; *Town of Westwood v. Adams Russell Company, Inc.*, 24 Mass. App. Ct. 914, 916, 507 N.E.2d 763 (1987); *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 405 N.E.2d 106 (1980); *Planned Parenthood League v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir. 1981); *See also Vargas-Figueroa v. Saldana*, 826 F.2d 160, 162 (1st Cir. 1987).

When asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party's claim of injury and chance of success on the merits. If the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the

merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." *Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617, 405 N.E.2d 106, 112 (1980).

Although the decision to issue a preliminary injunction is within the sound discretion of the court, courts have not hesitated to issue such injunctions. *Shell Pipe Line Corp. v. West Texas Marketing Corp.*, 540 F. Supp. 1155 (S.D. Tx. 1982) (court has discretion to issue temporary injunctions); *Commerce and Industry Insurance Co. v. Cableware, Ltd.*, F. Supp. 204 (S.D.N.Y. 1976) (power to issue temporary injunctions is within broad discretion of the court); *Companion Life Insurance Co. v. Schaffer*, 442 F. Supp. 826 (S.D.N.Y. 1977) (restraining all parties from bringing any action relating to proceeds at issue in the interpleader).

Consistent with the purpose underlying the federal rules and statutes authorizing the interpleader actions, courts have recognized that injunctions are often essential to protect stakeholders from the burden of defending multiple actions. *O'Daniel v. Porter*, 240 F.2d 636 (D.C. Cir. 1957) (injunction was necessary to protect stakeholder from competing claims and threats of foreclosure and garnishment); *Commercial Union Insurance Co. of New York v. Adams*, 231 F. Supp. 860 (S.D. Ind. 1964) (ordering injunction to protect party from burden of defending multiple actions).

Pursuant to 28 U.S.C. §2361 "in any civil action of interpleader... a district court may ... enter its order restraining [all claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action until further

order of the court." The relief may be applied preliminarily, as stated above, or it may be awarded permanently. 28 U.S.C. §2361; *Melton v. White*, 848 F. Supp. 1513 (W.D. Ok. 1994). "The statute, by its terms, affords the court the power to enjoin other judicial proceedings in order to reduce the possibility of inconsistent determinations or the inequitable distribution of the fund." *Id*. at 1514 *citing United States v. Major Oil Corp.,* 583 F.2d 1152 (10th Cir. 1978).

Under the Agreement, the Defendant JLB explicitly waived its right, and the rights of any subcontractors with whom it contracted, to place any mechanics' liens or other liens on any of the sites in accordance with Article 4.7.4 of the Agreement. Specifically, the Agreement *executed by Jason L. Bentley on behalf of JLB* states that:

> [t]o the extent permitted under the laws of the state in which the Work is located, **Contractor hereby agrees to waive and does hereby waive any and all mechanics' liens and right to lien in connection with the Work, agrees not to file any such mechanics' liens and agrees to look solely to ATC for payment for services hereunder and not to the Work site.** Contractor hereby agrees to include similar waiver provisions in each and every Subcontract by which each Subcontractor, to the extent permitted under the laws of the state in which the Work is located, waives any and all mechanics' liens and right to lien in connection with the Work. (Emph. added).

On or about March 16, 2005, JLB, through its President Mr. Bentley, contacted American Tower and informed it that JLB intended to file liens on a number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement. On or about March 23, 2005, American Tower was also contacted by one of the operators of a number of the Sites who informed American Tower that he had received notice from Mr. Bentley that JLB intended to file liens on a

number of the twenty-two (22) named Sites, as well as other sites subject to the Agreement.

A number of the Sites involved are owned, operated or managed by non-parties to the instant litigation. A lien on a property, such as the Sites described herein, will cause immediate injury, loss and damage to American Tower, its customers, and to any and all owners, operators and managers of the particular site and could impair American Tower's relationship with its customers as it relates to the management and operation of thousands of sites across the country. Specifically, any such action by the Defendant JLB will put at risk significant customer relationships of American Tower that currently generate over One Hundred Million Dollars ($100,000,000.00) in annual revenue from two of American Tower's largest customers which are directly affected by Defendants' threatened actions. American Tower is concerned that if the Defendant JLB files these liens, as Mr. Bentley has threatened, the owners of the Sites, which may be subject to those liens, will be forced to fight invalid liens, since any monies owed to JLB are the subject of the escrow in this action.

American Tower is also concerned that the business interests of American Tower, its customers, and the owners, operators, and managers of the named Sites, as well as other sites subject to the Agreement, will be irreparably harmed. Specifically, the reputations of American Tower and its customers may be irreparably harmed by the threatened actions. Additionally, the Plaintiff American Tower filed this interpleader action to ensure that that the Sites would not be encumbered with inappropriate liens and to further ensure that the proper

parties were paid their respective just compensation without incurring unnecessary and additional expense defending against non-meritorious and frivolous actions. The Defendant JLB executed the Agreement and knowingly waived all lien rights in accordance with the Agreement. As such, JLB should be precluded from filing liens pursuant to the Agreement between JLB and American Tower, as well as to the interpleader statute.

The preliminary injunction ordered by the Court (Young, J.) on or about November 16, 2004, was designed to protect the Plaintiff from having to defend any other actions at the same time it is litigating the interpleader action in Massachusetts. The order enjoined the Defendant JLB from bringing suit on a lien. The Plaintiff is now asking for additional relief to prevent the Defendant JLB from instituting any further legal proceedings, including regarding liens, relating to the Sites, the subcontractors and the funds at issue, as well as any monies allegedly owed under the Agreement. The Plaintiff is at risk of immediate and irreparable harm if the Preliminary Injunction is not issued and the Defendant JLB has expressly waived its right to record any liens pursuant to Article 4.7.4 of the Agreement.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter an order that:

    A.     Denies the Defendant's Motion to Remove Entry of Default;

    B.     Restrains the Defendant JLB actions from filing any mechanics', materialmen's or other liens against the Plaintiff which relate to the funds at issue

in this interpleader action or which relate to claims for alleged non-payment for work performed at the Sites in accordance with the Agreement; and

    C.    Grants such other and further relief as the Court deems necessary and proper.

Respectfully submitted,
AMERICAN TOWER CORPORATION,
By its attorneys,

/s/ Gregory J. Aceto
Gregory J. Aceto, Esq.
 (BBO No. 558556)
Erin J. Brennan, Esq.
 (BBO No. 660097)
JOHNSON & ACETO, P.C.
67 Batterymarch Street
Boston, MA 02110
(617) 728-0888

Dated: May 16, 2005